## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

———————————————————————

| | |
|---|---|
| **MARY L. GRICE,**   ) | |
| A resident of Montgomery County, MD,   ) | |
|   ) | Civil Action No._____ |
|     Plaintiff,   ) | |
|   ) | |
| **v.**   ) | |
|   ) | |
| **CAROLYN W. COLVIN, ACTING**   ) | |
| **COMMISSIONER OF SOCIAL**   ) | |
| **SECURITY ADMINISTRATION**   ) | |
|   ) | |
|     Defendant.   ) | |

———————————————————————)

### COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Mary L. Grice, by the undersigned counsel, alleges as follows:

### INTRODUCTION

1.      The most fundamental element of due process is notice and the opportunity to be heard.  In this case, the Social Security Administration ("SSA") deprived Plaintiff Mary L. Grice of her right to notice and a meaningful opportunity to be heard, in violation of the Due Process Clause of the Fifth Amendment.  The SSA violated Plaintiff Grice's due process rights by holding her responsible in 2014 for, and obtaining an administrative repayment of, an alleged overpayment of benefits that supposedly occurred under the account number of her father, who had died in 1960, without giving her actual notice, or notice that was reasonable under the circumstances, or any opportunity to be heard, before depriving her of her property.

2.      Plaintiff's father passed away in 1960, and Plaintiff last received survivor benefits under her father's social security account in April 1975.  In 2012, the SSA apparently began efforts to recover an "overpayment" that it claims was made in the 1970s to one of the six

beneficiaries under the account number of Plaintiff's father.  Although the SSA does not contend

any overpayment was made to Plaintiff herself, the SSA determined that she was responsible for

repaying it.

3.     For many years, the SSA was barred from attempting to recover this alleged debt,

because the SSA was subject to a 10-year statute of limitations on the recovery of overpayments.

The SSA sought to recover this alleged overpayment, along with perhaps as many as 185,000

other old overpayments, after the SSA issued a new regulation in 2011 removing the 10-year

statute of limitations.  The SSA apparently believes that its 2011 regulation not only eliminated

any limitations period on debts that were not yet time-barred, but also resurrected claims that had

already expired.

4.     The SSA claims to have first attempted to notify Plaintiff of the alleged

overpayment on the account of her father, and of its demand that she repay that alleged

overpayment, by sending a letter in August 2012 to a post office box that Plaintiff had rented

from the United States Postal Service in Roxboro, North Carolina, for a few years in the 1970s.

This post office box has not been in Plaintiff's name, or in the name of anyone known to her,

since she gave it up in 1979.  The SSA claims to have sent a second letter to Plaintiff

(presumably addressed to that same post office box) in October 2013.  Plaintiff never received

either letter.  Moreover, she did not have any way of learning that the letters had been sent, or the

contents of the letters, until after the occurrence of the events alleged herein.

5.     At the time the SSA allegedly sent the two mailed notices to a post office box in

North Carolina to which Plaintiff had no access or right of access, the SSA <u>actually knew</u>

Plaintiff's correct, current address in Takoma Park, Maryland, an address to which SSA has been

sending Plaintiff's annual Social Security Statements for at least the past 15 years.

6.      On February 7, 2014, Plaintiff received a notice from Maryland's Office of the Comptroller stating that her state tax refund would not be paid for the 2013 tax year because it was instead being offset against a debt that she allegedly owed to the federal government. Shortly after receiving this unusual notice, Plaintiff learned for the first time that the SSA contended that she was responsible for repaying the alleged overpayment on her father's account. A few days later, Plaintiff was notified by the Internal Revenue Service that it, too, was applying a portion of her 2013 federal tax refund to offset the remainder of this alleged debt to the SSA. On February 12, 2014, an official of the SSA told Plaintiff that she might not have received any improper payment, but that did not matter, so long as an overpayment was made to anyone on her father's account.   He also told her that the SSA would be reporting the alleged debt to various credit reporting bureaus, thereby harming her good credit rating.

7.      In short, the SSA has caused the Maryland Comptroller's Office and the IRS to seize Plaintiff's tax refunds as an offset against an alleged debt from the mid-1970s, a claim that once had been time-barred.  The SSA claims that Plaintiff must repay this debt not because she personally received any overpayment, but because she is vicariously liable for an overpayment made to someone under her father's account.  Moreover, an SSA official claimed that, because of her failure to repay this alleged "debt," the SSA would report Plaintiff to various credit reporting bureaus, thereby harming her credit rating.  The SSA has done these things without first making a reasonable, much less successful, effort to notify Plaintiff that she allegedly owed this debt, and without producing any evidence to Plaintiff or giving her any opportunity to contest that this nearly 40-year-old overpayment ever occurred, or that she was legally responsible for incurring or repaying it.  The SSA's actions in this case are a lethal cocktail amounting to a gross violation of Plaintiff's due process rights under the Constitution.

## JURISDICTION AND VENUE

8.      This is a civil action by Plaintiff Mary L. Grice against Defendant Carolyn W.

Colvin, in her capacity as the Acting Commissioner of the Social Security Administration.  This

Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this case presents colorable issues of

constitutional law that are inappropriate for determination by an administrative body, and the

Plaintiff, through no fault of her own, was not properly made a "party" to any hearing before the

Social Security Administration.  This Court also has jurisdiction under 28 U.S.C. § 1346(a)(2)

because this is a claim against the United States, not exceeding $10,000 and founded upon the

Constitution.  This Court also has jurisdiction under 28 U.S.C. § 1361 because this is an action in

the nature of mandamus to compel an officer of the SSA to perform a duty owed to plaintiffs.

Alternatively, this Court has jurisdiction under 42 U.S.C. § 405(g) because this lawsuit does not

seek adjudication of the underlying merits of whether Plaintiff received an overpayment from the

Social Security Administration, but instead, this lawsuit concerns collateral issues of whether the

SSA, which has already made a final decision against Plaintiff and has already enforced that

decision, followed its own regulations requiring it to notify Plaintiff prior to taking those steps.

Under the circumstances alleged herein, it would be futile for Plaintiff to seek administrative

remedies, as any remaining available remedies would not afford Plaintiff the same procedural

protections that she was entitled to receive in the first place, and they would not alleviate the

harm she has suffered and will continue to suffer while she attempts to avail herself of such futile

procedures.  The factual basis for this Court's jurisdiction is set forth more fully below.

9.      The Defendant is an officer of the United States acting in her official capacity,

and Plaintiff resides in this judicial district.  Accordingly, venue is proper in this judicial district

pursuant to 28 U.S.C. § 1391(e)(1) or, alternatively, 42 U.S.C. § 405(g).

4

## PARTIES

10.     Plaintiff, Mary L. Grice, is a resident of Takoma Park, Maryland.  Since 1982, Plaintiff has been employed by the United States Food & Drug Administration at its offices in Maryland.  She has lived at the same residence in Takoma Park, Maryland, since May 1984.

11.     Defendant Carolyn W. Colvin is the Acting Commissioner of the Social Security Administration.

12.     The Social Security Administration is an agency of the United States with its headquarters located at 6401 Security Blvd., Baltimore, Maryland 21235.

## RELEVANT ADMINISTRATIVE PROCEDURES

A.   The Initial Determination of an Overpayment.

13.     Under the regulations governing the Social Security program, an "overpayment" occurs when a beneficiary receives a payment in excess of the amount that should have been paid under the Social Security Act, including situations where benefits should have been terminated or no amount should have been paid.  20 C.F.R. § 404.501(a).  When an individual has been overpaid on a Social Security account, the regulations authorize the SSA to withhold payments to any other beneficiary who otherwise would be entitled to benefits under that account.  *Id*. at § 404.502(a)(2).

14.     When the SSA learns that a beneficiary potentially has received an overpayment, it is required to make an initial determination regarding the overpayment.  The SSA must determine (a) whether there has been an overpayment, (b) whether the beneficiary is legally responsible for repaying the overpayment, and (c) the amount of the overpayment.  The SSA must base this determination on the preponderance of the evidence.  *Id*. at §§ 404.902(j),(k).

15.     After the SSA has made the initial determination that the beneficiary is responsible for repaying an overpayment of a specific amount, the SSA must immediately send a notice to the beneficiary which includes, *inter alia*: the overpayment amount, and how and when it occurred; a request for full, immediate refund; an explanation of the right to request reconsideration of the fact and/or amount of the overpayment determination; instructions about the availability of forms for requesting reconsideration; an explanation that if the individual does not request reconsideration within 30 days of the overpayment notice, recovery of the overpayment will begin; a statement that an SSA office will help the individual complete and submit forms for appeal; and a statement that the individual should notify SSA promptly if she wants reconsideration of the determination.  *Id*. at § 404.502a.  All notices of initial determinations must be mailed to beneficiaries at their last known address.  *Id*. at § 404.904.

B.   Reconsideration and Subsequent Appeals.

16.     When a beneficiary is informed of an initial determination that she is responsible for repaying an overpayment, she has various appeal rights, including the right to ask the SSA to reconsider its decision, the right to a hearing before an Administrative Law Judge ("ALJ"), and the right to appeal the ALJ's decision to the Social Security Appeals Council and, ultimately, the federal courts.

17.     After the date on which the notice of initial determination is mailed, the beneficiary must be given 65 days to submit a written request asking the SSA to reconsider its initial determination.  *Id*. at § 404.909.  The beneficiary may submit additional evidence for the SSA to consider.  *Id*. at § 404.913.  In reconsidering its initial determinations, the SSA must make its determination based on the preponderance of the evidence.  *Id*. at § 404.920.

18.     Upon consideration of a request for reconsideration, if the SSA decides that its initial determination was correct, it is required to notify the beneficiary of the reconsidered determination by mailing to her last known address a written notice that includes the specific reasons for the determination and information about the right to a hearing.  *Id*. at § 404.920.

19.     After the date on which the notice denying reconsideration is mailed, the beneficiary is given 65 days to make a written request for a hearing before an Administrative Law Judge ("ALJ").  *Id*. at §§ 404.930, 404.933.  After the hearing, at which the beneficiary may present evidence, the ALJ must render a decision based on the preponderance of the evidence. *Id*. at § 404.953(a).  Accordingly, unless the preponderance of the evidence demonstrates the fact of the overpayment, the beneficiary's responsibility for it, and its amount, the ALJ must decide in favor of the beneficiary.

20.     After rendering a decision, the ALJ is required to notify the beneficiary of the decision.  If the ALJ's ruling is not fully favorable for the beneficiary, the beneficiary is given 65 days after the notice is mailed to submit a written request for review by the Social Security Appeals Council.  *Id*. at § 404.968.  The Appeals Council may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to the ALJ. The Appeals Council notifies the parties at their last known address of the action it takes.  *Id*. at § 404.967.  To the extent it reviews factual findings of the ALJ, the Appeals Council must affirm those findings if they are supported by substantial evidence.  *Id*. at § 404.970.

21.     After the Appeals Council has made its decision, it must notify the beneficiary of the decision.  If the Board of Appeals has ruled against the beneficiary, the beneficiary is given 65 days after the notice is mailed to file an action in a United States District Court seeking review of the determination by the SSA.  *Id*. at § 404.981.  At that point, the district court must

conduct a *de novo* review of all questions of law, and it must review any fact findings by the

SSA to determine whether they are supported by substantial evidence in the record.

C.   <u>Suspension of Collection Efforts During the Review Process.</u>

22.   When a beneficiary exercises her right to seek reconsideration of the

determination that she is responsible for an overpayment, the SSA is required to suspend efforts

to collect the alleged overpayment.  According to the SSA's Program Operations Manual System

("POMS"), "suspension will last as long as the due process request is unresolved."  POMS GN

02215.235(C)(1)(c); *see also* POMS GN 02201.225(B)(2) (SSA stops recovery efforts when

person requests reconsideration of overpayment decision, and even if reconsideration is denied,

SSA may not seek recovery if the beneficiary also asks for waiver of collection while further

appeals of overpayment decision are pending).

D.   <u>SSA's Collection of Debt Through Offset of Income Tax Refunds.</u>

23.   When a beneficiary has exhausted all avenues of appeal and the SSA has made a

final determination that a beneficiary is liable to repay an overpayment that is "certain in amount,

past due and legally enforceable," the SSA may refer the overpayment to the Internal Revenue

Service, as well as State tax authorities, for assistance with collection through offset of income

tax refunds that are due to the beneficiary.  20 C.F.R. § 404.520(b).  Prior to referring the

overpayment to the IRS or state tax authorities for collection, however, the SSA must take

additional procedural steps to give the beneficiary an opportunity to contest the overpayment.  *Id.*

at § 404.520(a).

24.   Before requesting the collection of an overpayment by reduction of federal and

State income tax refunds, the SSA is required to send a "written notice of intent" to the overpaid

person. *Id.* at § 404.521.  In that written notice, the SSA is required to state, *inter alia*, the

amount of the overpayment; that the SSA will request a reduction in the person's federal and State income tax refunds unless, within 60 days of the date of the notice, the person, provides evidence that the overpayment is not past due or legally enforceable, or asks the SSA to waive collection; that the SSA will review any evidence presented that the overpayment is not past due or not legally enforceable; and that the overpaid person has the right to inspect and copy the SSA's records related to the "overpayment as determined by us." *Id.* The overpaid person then has these rights, *i.e.*, the right to present evidence concerning the overpayment and its enforceability, and the right to inspect and copy the SSA's records related to the overpayment. *Id*. at §§ 404.522-404.524.

25. If, in response to the required notice, the individual submits evidence disputing that the overpayment occurred or that it was legally enforceable, the SSA must issue written findings which include supporting rationale for the findings. Only after the SSA issues such findings may the SSA refer the overpayment to the Department of Treasury for collection through offset of tax refunds. *Id*. at § 404.525.

E. Waiver of Enforcement of Debt.

26. Once the SSA has made a final determination that a beneficiary is responsible for repaying an overpayment of a certain amount, or concurrently with the appeals process for that decision, the beneficiary may ask the SSA to waive enforcement of the debt on the grounds that the beneficiary was without fault for the overpayment and that repayment would deprive her of income required for ordinary and necessary living expenses, or that collection of the overpayment would be against equity and good conscience. 20 C.F.R. at §§ 404.506(a), 404.507, 404.508, 404.509. The SSA's determination of whether it should grant a waiver to a beneficiary

is separate from the determination of whether there in fact was an overpayment, whether the beneficiary was legally responsible for repaying it, and its amount.

27.     If the SSA denies the initial request for a waiver, the SSA may start enforcement efforts to collect the overpayment, even if the beneficiary appeals the initial determination. *Id*. at § 404.506(b).

28.     When a beneficiary asks the SSA for a waiver, the beneficiary – <u>not</u> the SSA – has the burden of proving her entitlement to the waiver.  Because of this, the right to seek a waiver of enforcement does <u>not</u> put the beneficiary in the same position as someone who can contest the SSA's initial determination of the fact of the overpayment, a stage at which the SSA, rather than the beneficiary, has the burden of proof.  This is especially important when the issue is whether the beneficiary is responsible for repaying an alleged debt that is more than 10 years old, since it is extremely unlikely that either the SSA or the beneficiary will be able to produce evidence relevant to the existence of the debt, or the beneficiary's legal responsibility for it.

F.    <u>Statute of Limitations on SSA's Recovery of Overpayments.</u>

29.     Prior to 2011, the SSA had a statute of limitations that prevented it from seeking recovery of overpayments that could have been collected more than 10 years before.  However, effective November 21, 2011, the SSA removed any statute of limitations governing its collection of overpayments. 76 FR 65107 (Oct. 20, 2011).  Consequently, the SSA now asserts the right to recover overpayments no matter how long ago they were incurred – and, significantly, regardless of whether such debts were once time-barred and are now being resurrected.  Pursuant to this change, the SSA has begun to pursue the collection of alleged overpayments that were allegedly incurred more than 30 years ago, including overpayments made to beneficiaries who, like Plaintiff, were minors or students at the time these payments

were made, and who never had any reason to suspect that they received an overpayment or may be asked to repay it, and who therefore never had any reason to collect or preserve records or other evidence pertaining to the payments made to them, to someone else with a duty to act on their behalf, or to someone else who happened to be a beneficiary under a common account.

## FACTUAL ALLEGATIONS

30.     Plaintiff Mary L. Grice grew up in New York and North Carolina.  Her father passed away in 1960, leaving five minor children, including Plaintiff, eligible for benefits under the Social Security Survivors Benefits program.  At that time (and until the law changed in October 1982), dependent children were allowed to receive survivor's benefits until the age of 18, or, if they continued their education in a post-secondary school, until the age of 22.  Plaintiff was eligible for and continued to receive benefits until 1975, at which time she was still attending school but also began to work.  One or more of Plaintiff's other siblings continued receiving benefits until approximately 1980.

31.     From 1975 through January 1982, Plaintiff was employed by the State of North Carolina.  From approximately 1976 through 1979, while she was living and working in North Carolina, Plaintiff rented a post office box from the United States Postal Service in Roxboro, North Carolina.

32.     In May 1982, Plaintiff moved to the State of Maryland, where she has continuously resided for the past 31 years.

33.     Beginning in October 1982 and continuing through the present time, Plaintiff has been employed by the United States Food & Drug Administration ("FDA") in the State of Maryland.

34.     For many of the years that Plaintiff has worked -- excluding some of her years as an employee of FDA – Plaintiff has been required to contribute to the Social Security system. Because she has paid into the Social Security system for a sufficient number of years, upon reaching the age of 62, she will be eligible to receive Social Security retirement benefits when she retires.

35.     Because Plaintiff has contributed for enough years to qualify for Social Security benefits, Plaintiff receives an annual Social Security Statement from the SSA.  Each year, the SSA sends this annual Social Security Statement to Plaintiff at her current address in Takoma Park, Maryland.  The SSA has been sending such statements to Plaintiff at her current address for at least the past 15 years.

36.     On February 7, 2014, Plaintiff received two notices from the Maryland Office of the Comptroller, both of which were dated February 5, 2014.  One notice informed Plaintiff that her State tax refund of $1465.80 had been intercepted and had been applied to an outstanding debt that she owed to another agency.  The other notice informed her that the intercepting agency was the Social Security Administration, and it provided a telephone number for her to call with any questions concerning the debt.  Plaintiff called the telephone number, which was for the office of Debt Management Services.  She heard a recording saying that the Social Security Administration was the government agency to whom she owed a debt.

37.     On February 10, 2014, Plaintiff received a notice from the office of Debt Management Services saying that she owed the sum of $2996 to the SSA.  The notice also listed a telephone number for the SSA.  Prior to this time, Plaintiff had no knowledge, and no reason to know, that the SSA contended she owed this amount.

38.     Later on February 10, 2014, Plaintiff called the SSA telephone number that had been provided to her.  She spoke with a woman who identified herself as "Tonya."  Tonya told Plaintiff that the SSA had made an overpayment under the social security number of Plaintiff's father. Tonya said that the SSA first attempted to collect this debt in 2012 by sending a notice to Plaintiff's former address, the post office box that she had used in Roxboro, North Carolina.  As they spoke, Tonya said she was trying to effect a waiver of Plaintiff's alleged debt electronically, but that she was not successful.  Tonya advised Plaintiff to go to the nearest SSA field office to request a waiver.

39.     On February 12, 2014, Plaintiff visited the SSA field office on New Hampshire Avenue in Silver Spring, Maryland.  She met for approximately one hour with a man who identified himself as "Juan" and who worked for the SSA.  Throughout their meeting, Juan was able to, and did, access information about Plaintiff's records from his SSA computer screen, and he orally or visually provided some of that information to Plaintiff.  Juan told Plaintiff that there had been an overpayment under her father's social security account number.

40.     Juan said that in August 2012, the SSA sent a first notice of overpayment to Plaintiff's former post office box in Roxboro, North Carolina.  Plaintiff asked Juan whether he could access a copy of the notice on his computer, but he said he could not.  He also said that there was no indication in the computer system as to whether the first notice had been received, or whether it had been returned to the SSA.

41.     Juan said that a second overpayment notice was sent to Plaintiff on October 25, 2013.  Juan could not tell Plaintiff what address that second notice had been sent to, or whether it had been received or returned to the SSA.

42.     Juan said that on January 13, 2014, Plaintiff's alleged debt had been referred to the Department of Treasury's Financial Management System and reported to the Internal Revenue Service, and that it would be reported to the three credit bureaus.

43.     Juan said that on February 10, 2014, the SSA received an offset payment from the Financial Management System on account of Plaintiff's State tax refund having been intercepted.

44.     Juan told Plaintiff that at various times, six people had received benefits under the social security account number of her father: Plaintiff, her four siblings, and the ex-wife of her father, who received widow's benefits from 1978 until her death in 2007.

45.     Plaintiff asked Juan whether the computer system indicated that she had been the specific recipient of the overpayment.  Juan responded that all of the beneficiaries under the relevant social security account number (in this case, Plaintiff's father) were viewed and treated by the SSA as a single unit, so it did not matter to the SSA who actually received an overpayment.  Juan said that once the SSA determines that there was an overpayment to any beneficiary of the account, the SSA goes down the list of all beneficiaries of that account until it locates the first person who has a record of working and paying taxes – in this case, Plaintiff – and seeks to recoup the overpayment from that beneficiary.  He said that a new law allowed the SSA to collect overpayments from any beneficiary or recipient from whom the overpayment could be collected.

46.     Plaintiff asked Juan to provide her with a copy of the records relevant to her claims.  Juan responded that he could only share information with Plaintiff to the extent that it pertained specifically to her.

47.     Juan showed Plaintiff his computer screen, and it appeared to Plaintiff that much information was missing.  When Plaintiff questioned Juan about this, he responded that the

account was old and that some of the information had been archived.  Juan advised her that she could request the information by filing a Freedom of Information Act request at the SSA's Baltimore office.

48.     Juan did not tell Plaintiff that she could file a request for reconsideration of the initial determination that there had been an overpayment that she was responsible for repaying.

49.     Juan told Plaintiff that she could file a request for a "waiver" of the overpayment, but he said that the initial review of the waiver request would be conducted by his office, and the request "would be denied" because Plaintiff was working and owned a home and a vehicle.  Juan then described for Plaintiff the various ways in which she could appeal a denial of the waiver, including requesting a reconsideration hearing in connection with the waiver, and a hearing before an Administrative Law Judge.

50.     On February 12, 2014, Plaintiff received a notice dated February 10, 2014, from the Department of Treasury, Financial Management Service saying that part of her federal tax refund had been intercepted and applied to satisfy the $2996 debt that she owed to the SSA.

51.     In fact, the IRS withheld the entire $2996 that Plaintiff allegedly owed to the SSA, even though the State of Maryland had previously withheld her state tax refund of $1465.80.  On April 4, 2014, the SSA informed Plaintiff that she would soon be receiving the $1465.80 that the State of Maryland had withheld.  In other words, the SSA still applied the $2996 from Plaintiff's federal tax refund to satisfy her alleged debt, but the SSA would not be keeping <u>more</u> of Plaintiff's money than the entire amount of her alleged debt.

52.     There have been numerous reports of other cases in which the SSA has seized what it contended were "overpayments" from one-time beneficiaries through the Tax Offset Program under circumstances similar to this case, *i.e.*, where, prior to seizing the overpayment,

the SSA failed to provide the beneficiaries the kind of notice required by the Due Process

Clause, and the alleged overpayments occurred more than 10 years prior to the SSA's recovery

of the so-called "debt," and the SSA was seeking to recover from a person who did not

personally receive any improper payment (perhaps because the person was a child at the time the

alleged overpayment occurred).  *See*, *e.g.*, http://www.sj-r.com/x1641167683/Dave-Bakke-

Social-Security-collects-40-year-old-bill/?tag=1; http://www.nbcchicago.com/investigations/us-

treasury-irs-statute-limitations-tax-grab-208436421.html#ixzz2x0rbabTE.   In response to a

newspaper reporter's inquiry about one such case, an SSA spokesman, BJ Jarrett, said that in

June 2012, the SSA began to inform people about its intention to collect those older debts.  *See*

http://www.usatoday.com/story/news/nation/2013/ 05/06/mother-social-security-debt/2138219.

Jarrett said that the agency sent approximately 185,000 notices to people with debts that were

more than 10 years old.  *Id.*  Jarrett said that if there was no answer to the notice after 60 days,

the debt would be referred to the Treasury Offset Program for Tax Refund Offset.  *Id.*

## <u>VIOLATIONS OF PLAINTIFF'S RIGHTS UNDER THE DUE PROCESS CLAUSE</u>

53.     The SSA has violated Plaintiff's due process rights under the Constitution's Fifth

Amendment by sending notices of her alleged overpayment to a post office box in Roxboro,

North Carolina that Plaintiff last used in 1979, and then, without any indication that she actually

received the notices, proceeding to authorize tax authorities to seize her state and federal income

tax refunds in satisfaction of these alleged debts, and reporting to credit bureaus that she had

failed to repay these alleged debts.  The SSA failed to satisfy the requirement that, when notice is

a person's due, the means employed must be such as one desirous of actually informing the

person might reasonably adopt to accomplish it.  (*Jones v. Flowers*, 547 U.S. 220, 229 (2006);

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315.)   In this case, the SSA

16

cannot even say that it sent the notices of overpayment to Plaintiff's "last known address" --
because the SSA actually <u>does know</u> Plaintiff's current, correct mailing address, i.e., the address
in Takoma Park, Maryland, to which the SSA has been sending her annual Social Security
Statements for at least the past 15 years.

54.     The SSA has also violated Plaintiff's due process rights under the Constitution's
Fifth Amendment by taking her property to satisfy an alleged debt that appears to have been
incurred prior to 1980 – a debt which, prior to a 2011 change in the SSA's regulations, had been
barred by a 10-year statute of limitations.  In this case, Plaintiff never knew or had reason to
suspect that she had received an overpayment in the 1970s.  Therefore, she never had any reason
to try to preserve income records or any other relevant testimony or information from that time
period.  Other people who might have been witnesses, including some of the other beneficiaries
on her father's account, have died since that time.  Under these circumstances, nearly 40 years
after a debt was allegedly incurred, it would be virtually impossible for anyone to effectively
defend against a claim for liability.

55.     The SSA has also violated Plaintiff's due process rights under the Constitution's
Fifth Amendment by recouping the alleged overpayment from Plaintiff, and reporting to credit
bureaus that she had failed to repay the alleged debt, without even contending, much less
proving, that she actually received any overpayment, or that she had any legal responsibility over
any other person who received such an overpayment.  In this case, the SSA apparently contends
not that Plaintiff herself ever received an improper payment, but instead, that Plaintiff was one of
several beneficiaries of her father's account, and that an overpayment was made to one of those
beneficiaries.

56.     The SSA has also violated Plaintiff's due process rights under the Constitution's Fifth Amendment, by refusing to let Plaintiff review records pertaining to the alleged overpayment for which the SSA was holding Plaintiff responsible, even when Plaintiff demanded to inspect those records.  When Plaintiff went to the SSA office in Silver Spring on February 12, 2014, she specifically asked to be shown the records pertaining to the alleged overpayment.  The SSA refused to let her see any records that did not pertain specifically to her, even though such records might have been relevant to the overpayment for which she was held responsible.  In this case, where the SSA referred Plaintiff's alleged debt to the IRS for collection and has reported to credit bureaus that she had failed to repay the alleged debt, the SSA's refusal to permit Plaintiff see all of its records pertaining to the alleged overpayment was not only a violation of the Due Process Clause, but also a violation of the SSA's own regulations.  *See* 20 C.F.R. §§ 404.521(e), 404.524.

## COUNT I:  REQUEST FOR INJUNCTIVE RELIEF AGAINST DEFENDANT

57.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 56 as if fully set forth herein.  This Count is a civil action seeking injunctive relief against Defendant Carolyn W. Colvin in her official capacity as Acting Commissioner of the Social Security Administration.

58.     Plaintiff has suffered serious, ongoing, and irreparable injury as a result of Defendant's policies and practices as alleged herein.

59.     Plaintiff has no adequate remedy at law for the due process and other violations alleged herein, and she cannot be made whole through restitution, damages, or other monetary payments alone.

60.     Plaintiff is entitled to a temporary, preliminary, and permanent injunction requiring Defendant: (a) to notify the Internal Revenue Service, the Maryland Office of Comptroller, all credit bureaus with which the Social Security Administration communicates concerning debts, and any other persons or entities with whom the Social Security Administration communicates concerning debts, that Plaintiff, neither at present nor in the past, has or had any lawful debt to the Social Security Administration on account of any overpayment; (b) to issue whatever instructions are necessary to cause such entities to release any and all tax refunds, with interest, that should have been paid to Plaintiff; (c) to take all steps necessary to ensure that any negative comments, remarks, or status regarding Plaintiffs' credit ratings and reports are corrected to reflect that Plaintiff did not incur, and did not owe, the amounts that Defendant has claimed she owed; and (d) to review all policies, practices, and directives of the SSA, as well as other state and federal agencies acting in combination and concert with the SSA, that were a cause, in whole or in part, of the due process violations alleged herein, and to take all steps reasonably practicable to promptly modify and/or supplement those policies, practices, and directives to ensure that no similar due process violations will occur in the future.

## COUNT II:  REQUEST FOR DECLARATORY JUDGMENT

61.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 56 as if fully set forth herein.  This Count is a civil action seeking a declaratory judgment against Defendant Carolyn W. Colvin in her official capacity as Acting Commissioner of the Social Security Administration.

62.     Plaintiff is entitled to a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  An actual controversy exists between the parties as alleged in this Complaint and will continue to exist unless and until it is resolved by this Court.

63.     Plaintiff is entitled to a Declaratory Judgment that notice by mail prior to enforcement proceedings to collect overpayments, or prior to referring debts for collection to the Department of Treasury, violates the Due Process Clause of the Fifth Amendment to the Constitution, unless Defendant also receives proof that such notice has actually been delivered to the intended recipient.

64.     Plaintiff is entitled to a Declaratory Judgment that the SSA may not recover overpayments that occurred prior to November 21, 2001, where the SSA did not begin its efforts to recover such overpayments until more than 10 years later.

65.     Plaintiff is entitled to a Declaratory Judgment that the SSA may not recover overpayments made to a person unless the SSA can show, by a preponderance of the evidence, that the person, who had reached the age of majority and was otherwise legally competent at the time, was the actual recipient of an improper payment from the SSA.

66.     Plaintiff is entitled to a Declaratory Judgment that the SSA must, upon demand by a person whom the SSA contends is liable for repaying an overpayment, make available for inspection all records pertaining to the alleged overpayment, whether or not such records pertain to persons other than the one whom the SSA is seeking to hold responsible for repayment.

## **PRAYER FOR RELIEF**

Plaintiff demands that the Court enter judgment against Defendant and grant the following relief:

1. Enter an injunction ordering Defendant to notify the Internal Revenue Service, the Maryland Office of Comptroller, any credit bureaus with which the Social Security Administration communicates concerning debts, and any other persons or entities with whom the Social Security Administration communicates concerning debts, that Plaintiff, neither at present

or in the past, has had any lawful debt to the Social Security Administration on account of any overpayment, and issue whatever instructions are necessary to cause such entities to release tax refunds that should have been paid to Plaintiff and to remove any negative comments or information from Plaintiff's credit reports;

2. Issue a Declaratory Judgment stating that:

(a) Notice by mail issued by the Social Security Administration prior to enforcement proceedings to collect overpayments, or prior to referring debts for collection to the Department of Treasury, violates the Due Process Clause of the Fifth Amendment, unless Defendant also receives proof that such notice has actually been delivered to the intended recipient;

(b) The Social Security Administration may not recover overpayments that occurred prior to November 21, 2001, where it did not begin its efforts to recover such overpayments until more than 10 years later;

(c) the Social Security Administration may not recover overpayments made to a person unless it can show, by a preponderance of the evidence, that the person, who had reached the age of majority and was otherwise legally competent at the time, was the actual recipient of an improper payment from the SSA; and

(d) the Social Security Administration must, upon demand by a person whom it contends is liable for repaying an overpayment, make available for inspection all records pertaining to the alleged overpayment, whether or not such records pertain to persons other than the one whom the Social Security Administration is seeking to hold responsible for repayment.

3. Equitable tolling of any deadlines or statutes of limitations that may apply to any administrative claims that could be asserted by Plaintiff while her constitutional rights are adjudicated.

4. Award Plaintiff all costs of this action.

5. Award Plaintiff reasonable attorneys' fees pursuant to the Equal Access for Justice Act or other applicable provisions of law.

6. Grant Plaintiff such other relief as the Court deems just and proper.

Robert L. Vogel
Maryland Federal Bar No. 07960
VOGEL, SLADE & GOLDSTEIN, LLP
1718 Connecticut Ave., N.W., 7th Floor
Washington, D.C. 20009
Tel. 202-537-5904/ Fax 202-537-5905
E-mail: rvogel@vsg-law.com

Attorney for Plaintiff