**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

FILED    ENTERED
LODGED    RECEIVED

MAR 3 1 2015

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

|  |  |
|---|---|
| MARY L. GRICE, *et al.* | * |
| Plaintiff, | * |
| v. | *    Case No.: GJH-14-1082 |
| CAROLYN W. COLVIN, | * |
| (Acting Commissioner of the | |
| Social Security Administration) | * |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs bring this case against Carolyn W. Colvin, the acting Commissioner of the Social Security Administration (the "SSA"). Plaintiffs present several allegations of constitutional and statutory violations stemming from the SSA's taking of a portion of Plaintiffs' tax refunds to satisfy overpayments the SSA determined it had made to Plaintiffs in excess of ten years ago. This Memorandum Opinion and accompanying Order address Defendant's Motion to Dismiss, ECF No. 25. A hearing was held on March 6, 2015. For the reasons stated below, Defendant's Motion to Dismiss is GRANTED, in part, and DENIED, in part. Plaintiff Theodore Verbich's claims are dismissed for failure to exhaust administrative remedies. Claims brought by Plaintiffs Mary Grice, John Jones, and Denise Hart shall proceed with limited exceptions.[1]

---

[1] The portions of Hart's and Jones' claims related to credit bureaus are dismissed for lack of standing. In addition, the portions of Counts III & VI alleging violation of the Constitution's *Ex Post Facto* clause are dismissed for failure to state a claim.

## I. BACKGROUND

### A. Statutory Authority

The Debt Collection Improvement Act of 1996, Pub. L. No. 104-134, § 31001(b), 110 Stat. 1321, requires federal agencies to submit delinquent debts to the U.S. Department of the Treasury (the "Treasury") for tax offsets. *See* 31 U.S.C. § 3720A. There is no federal law imposing a statute of limitations for the collection of these debts through tax offsets. However, before 2009, the Treasury had implemented a regulation-imposed limitation of ten years. *See* 31 C.F.R. § 285.2(d)(1)(ii)(2009) (explaining that a debt must be "referred for offset within ten years after the agency's right of action accrues"). Consistent with the Treasury's regulation, the SSA also promulgated a regulation that it would "refer an overpayment to the Department of the Treasury for offset against tax refunds no later than 10 years after [the SSA's] right to collect the overpayment first accrued." 20 C.F.R. § 404.520(b)(2011). An overpayment occurs when the SSA pays more than the correct amount to a social security beneficiary. *See* 42 U.S.C. § 404(a)(1).

In 2009, the Treasury revised its regulation to eliminate the ten-year limitation for collecting debts through tax offsets. Now, "[c]reditor agencies may submit debts . . . for collection by tax refund offset irrespective of the amount of time the debt had been outstanding." 31 C.F.R. § 285.2(d)(6)(i). The Treasury also specifically notes that the regulation is retroactive: ". . . all nontax debt, including debts that were delinquent for ten years or longer prior to December 28, 2009 may be collected by tax refund offset." *Id.* The SSA amended its regulations in October 2011 to conform to the Treasury's regulations. *See* ECF No. 25-1 at 21 (citing 76 Fed. Reg. 65107-01, 65107 (Oct. 20, 2011)). Since that amendment, the SSA ". . . will refer

2

overpayments to the Department of the Treasury for offset against Federal tax refunds regardless

of the length of time the debts have been outstanding." 20 C.F.R. § 404.520(b).

The SSA's authority to collect overpayment debts is found in 42 U.S.C. § 404(a)(1),

which authorizes the SSA to recover overpayments made to an individual under the old-age,

survivors, or disability insurance programs. The statute permits the SSA to recoup the

overpayment by, among other means, reduction in tax refunds. *See* 42 U.S.C. § 404(a)(1)(A).

The SSA's ability to recoup overpayments is limited by 42 U.S.C. § 404(b), which provides that

". . . there shall be no adjustment of payments to, or recovery by the United States from, any

person who is without fault if such adjustment or recovery would defeat the purpose of this

subchapter or would be against equity and good conscience." The SSA's regulations require that,

once the SSA determines that an overpayment was made, the SSA must send written notice to

the allegedly overpaid individual. *See* 20 C.F.R. § 404.502a. The notification must include:

> (a) The overpayment amount and how and when it occurred;
> (b) A request for full, immediate refund, unless the overpayment can be withheld from the next month's benefit;
>  . . .
> (e) An explanation of the right to request waiver of adjustment or recovery and the automatic scheduling of a file review and pre-recoupment hearing (commonly referred to as a personal conference) if a request for waiver cannot be approved after initial paper review;
> (f) An explanation of the right to request reconsideration of the fact and/or amount of the overpayment determination;
> (g) Instructions about the availability of forms for requesting reconsideration and waiver;
> (h) An explanation that if the individual does not request waiver or reconsideration within 30 days of the date of the overpayment notice, adjustment or recovery of the overpayment will begin;
> (i) A statement that an SSA office will help the individual complete and submit forms for appeal or waiver requests; and
> (j) A statement that the individual receiving the notice should notify SSA promptly if reconsideration, waiver, a lesser rate of withholding, repayment by installments or cross-program adjustment is wanted.

*Id.*

After receiving notice of the initial determination, the allegedly overpaid individual has the right to request reconsideration of the overpayment decision. *See* 20 C.F.R. § 404.907. A reconsideration request must be made within sixty days of the initial determination of overpayment, but the time may be extended for good cause if, for instance, the individual never received notice of the initial overpayment decision. *See* 20 C.F.R. § 404.909 & 20 C.F..R. § 404.911. If the allegedly overpaid individual requests reconsideration, the SSA is to review the case and issue written notice of its decision. *See* 20 C.F.R. § 404.913 & 20 C.F.R. § 404.922. If the individual does not agree with the reconsideration decision, he or she can request a hearing before an administrative law judge. *See* 20 C.F.R. § 404.921. After the hearing, the administrative law judge will issue a decision on the issue, which can be appealed to the SSA's Appeals Council. *See* 20 C.F.R. § 404.955. The Appeals Council can decide to review the case or deny the request for review. *See id.* Once the Appeals Council has denied the request for review or reviewed the case and issued a decision, the allegedly overpaid individual can file an action in a federal district court within sixty days of the decision. *See* 20 C.F.R. § 404.981.

Instead of or in addition to reconsideration, an allegedly overpaid individual can ask the SSA to waive the overpayment. An individual's overpayment can be waived if the individual shows that he or she is without fault in causing the overpayment and that "adjustment or recovery would either defeat the purpose of title II of the Act or be against equity and good conscience." *See* 20 C.F.R. § 404.506(c). If waiver of the overpayment is requested, the SSA must decide if a waiver may be approved. *See id.* If waiver cannot be approved simply on review of the information and documentation provided to the SSA, the individual is then notified that a file review and a personal conference will take place. *See id.* During the personal conference, the

individual and their representative can review the "claims file and applicable law and regulations with the decisionmaker . . ." *See* 20 C.F.R. § 404.506(d). After the personal conference, the SSA is to issue a written decision that specifies the "findings of fact and conclusions in support of the decision to approve or deny waiver" and advises the individual of the right to appeal the decision. *See* 20 C.F.R. § 404.506(g). If the individual does not appear for the conference, the SSA will make a decision on the waiver request based on the written evidence. *See* 20 C.F.R. § 404.506(h). If the waiver request is denied without a conference, the individual can request reconsideration of the decision. *See id.* Both the denial of the waiver request after a personal conference and the decision on reconsideration can be appealed to an administrative law judge. *See* 20 C.F.R. § 404.930(a). After that, the appeals process is the same process (administrative law judge, Appeals Council, federal court) described above.

In addition to providing initial notice of overpayment, the SSA has issued regulations that it must follow before requesting that the Treasury offset a taxpayer's income tax refunds to satisfy an outstanding overpayment due to the SSA. *See* 20 C.F.R. § 404.520. The SSA first sends the individual written notice that they have an outstanding overpayment due to the SSA and that the overpayment will be collected through a tax offset unless, within sixty days of the notice, the allegedly overpaid person: (1) repays the overpayment; (2) provides evidence that the overpayment is not past due or legally enforceable; or (3) asks for waiver of the overpayment. *See* 20 C.F.R. § 404.521. If the individual asserts that the overpayment is not past due or not legally enforceable, the individual is entitled to inspect or copy the SSA records related to the overpayment by notifying the SSA of that intention. *See* 20 C.F.R. § 404.524(a). The SSA will then schedule a date for inspection or mail copies of the records to the overpaid individual. *See* 20 C.F.R. § 404.524(b). After review of the records and any additional evidence, the SSA will

make a decision on whether the overpayment is past due and legally enforceable. *See* 20 C.F.R. §

404.522(c). The decision will include written findings and supporting rationale for the findings.

*See* 20 C.F.R. § 404.523(a). Also, unlike a decision on waiver or reconsideration, this decision is

the SSA's final decision on overpayment. Specifically, the regulation states that "[i]ssuance of

these findings concerning whether the overpayment or part of the overpayment is past due and

legally enforceable is the final Agency action with respect to past-due status and enforceability

of the overpayment." *Id.* If the allegedly overpaid individual requests waiver instead of

challenging the legality of the overpayment, the administrative process is the same as a request

for waiver of an initial determination. *See id.*

There are currently four Plaintiffs named in this lawsuit—Mary Grice, Theodore

Verbich, John Jones, and Denise Hart.[2] After the lifting of the ten-year-regulation-imposed

limitations period for the collection of debts through tax offsets, the SSA determined that

Plaintiffs had outstanding debts (due to overpayments) with the SSA that were over ten years

old. After sending notice to the Plaintiffs using the addresses where the SSA originally sent the

overpayment and receiving no response, the SSA recouped the alleged debts from the Plaintiffs

using the Treasury Offset Program, which, as discussed above, authorizes the interception of tax

---

[2] Former Plaintiffs Joseph McCallion and Shirley Jones have voluntarily dismissed their claims. *See* ECF Nos. 29 & 39. Plaintiffs request class certification, but that issue has not yet been decided. *See* ECF No. 15 at 52. Plaintiffs filed a Motion to Certify Class and Request for Stay of Briefing, ECF No. 11, on June 20, 2014, advising that discovery was necessary before the parties could adequately argue for or against class certification. The Court issued an order that briefing would be stayed until February 1, 2015, providing sufficient time for the Defendant to file a responsive pleading and the parties to engage in class certification discovery. *See* ECF No. 21. Defendant then filed a Motion to Dismiss in lieu of an Answer, and the parties have not yet engaged in any discovery that would permit resolution of the Motion to Certify Class. As the motion has now been pending for approximately eight months without briefing, the Court denies the Motion to Certify Class without prejudice and with permission to refile after the entry of the Court's Order regarding Defendant's Motion to Dismiss.

refunds to pay debts to federal agencies. *See* ECF No. 15 at ¶ 1. The four Plaintiffs challenge the SSA's procedure in collecting these debts as well as the SSA's entitlement to collect these debts. The Court will discuss the facts of each of the four Plaintiffs' experiences with the SSA.

### B. Mary Grice

Plaintiff Mary Grice received social security benefits from 1960-1975 under the Social Security Survivors Benefits program due to her father's death. ECF No. 15 at ¶ 41. Grice lived in North Carolina until moving to Maryland in 1982. *Id.* at ¶ 41–43. Grice has contributed to the Social Security System for a sufficient number of years to qualify for Social Security benefits, and she has received an annual Social Security statement from the SSA for at least the past fifteen years. *Id.* at ¶ 46. On February 7, 2014, Grice received notice that the SSA had intercepted her Maryland State tax refund ($1,485.80) so it could be applied to an outstanding debt she owed to the SSA. *Id.* at ¶ 47. On February 10, 2014, Grice received notice from the SSA's Office of Debt Management Services that she owed $2,996.00 to the SSA. *Id.* at ¶ 48. On the same day, Grice called the number provided on the notice. *Id.* at ¶ 49. She was informed that the SSA had made an overpayment related to the social security number of Grice's father. *Id.* The SSA representative informed Grice that they had attempted to collect the debt in 2012 by sending notice to Grice's pre-1983 address in North Carolina. *Id.* Grice was told she could request a waiver of the debt. *Id.* The SSA representative tried to waive the overpayment over the phone but was unsuccessful. *Id.*

Grice then visited a local SSA office. *Id.* at ¶ 50. She was informed that six people had received benefits under the account linked to her father's social security number, including her. *Id.* at ¶ 55. The SSA representative told Grice that he did not know who received the overpayment. *Id.* at ¶ 56. Grice was informed that, in addition to the 2012 notice sent to North

7

Carolina, a second notice of overpayment was sent to an unknown address on October 25, 2013. *Id.* at ¶ 52. The representative told Grice that the SSA referred the alleged debt to the Treasury's Financial Management Services, reported it to the Internal Revenue Service ("IRS"), and reported it to three credit bureaus on January 13, 2014. *Id.* at ¶ 53. Although Grice was shown some of the SSA's records on a computer screen, she was told that some of the information had been archived. *Id.* at ¶ 58. She was also told that she could file a Freedom of Information Act request to obtain the records. *Id.* Grice was informed that if she requested a waiver of the overpayment, the waiver would be denied because she had enough resources to pay the debt. *Id.* at ¶ 60. On February 12, 2014, Grice received notice from the Treasury's Financial Management Services that the IRS withheld the $2,996.00 debt she owed to the SSA from her federal tax return. *Id.* at ¶¶ 61–62. Grice's Maryland State $1,465.80 tax refund was then returned. *Id.* at ¶ 63.

This lawsuit was filed on April 8, 2014. ECF No. 1.[3] On April 17, 2014, the Treasury returned $2,996.00 to Grice. ECF No. 15 at ¶ 66. The SSA sent Grice notice on April 21, 2014, stating: "We are writing to give you new information about the child's benefits which you received on the Social Security record. We are paying you $2996.60 which was previously withheld from your income tax refund. This is in addition to the $1465.80 we paid you on April 7, 2014." *Id.*

### C. Theodore Verbich

Plaintiff Theodore Verbich received social security survivor benefits after his father died in 1960. *Id.* at ¶ 67. In July 1979, the SSA informed Verbich that he had received overpayments

---

[3] Several news outlets featured Grice's story. ECF No. 15 at ¶ 64. On April 14, 2014, the SSA announced that it was suspending future referrals to the Treasury Offset Program of debts that were more than ten years old pending review of the SSA's procedures. *Id.* at ¶ 65.

totaling $723.00—from alleged overpayments of $171.40 in January 1977 and $551.60 in March 1977. *Id.* at ¶ 68. Verbich disputed the $171.40 overpayment but agreed to repay the $551.60. *Id.* At that time, he reached an agreement with the SSA to only repay the $551.60 in monthly installments, which he did. *Id.* Believing the matter to have been settled twenty-five years prior, in 2004, Verbich shredded the documents concerning his communications with the SSA and his old tax documents. *Id.* at ¶ 69.  In March 2014, the Maryland Comptroller's Office sent notice to Verbich that $171.40 had been intercepted from his State tax refund to satisfy a debt to a federal agency (the SSA). *Id.* at ¶ 70. Verbich contacted the SSA, asked for the SSA's records that would explain how the SSA had determined how much was owed, and asked why he had not been notified before the SSA intercepted his refund. *Id.* at ¶ 71–72. He was informed that the overpayment occurred in January 1977 but that no further information was available. *Id.* at ¶ 71. Verbich was also told that notice was sent to his "last known address," but Verbich never received the notice even though he has been receiving Social Security earning statements for many years at his current address in Glenn Dale, Maryland. *Id.* at ¶ 72.

### D.  John Jones

Plaintiff John Jones never received survivor benefits from the SSA. *Id.* at ¶ 73. His father died in 1967 and his mother received survivor benefits, but those benefits stopped before Jones turned eighteen. *Id.*[4] In March 2014, Jones received notice from the Treasury's Financial Management Service that $3,066.60 of his 2014 federal tax refund had been intercepted and applied to a debt that he owed to the SSA. *Id.* at ¶ 74. Before receiving this notice, Jones had not received any notice that he was responsible for an alleged debt to the SSA. *Id.* at ¶ 75. Jones did receive annual Social Security earning statements from the SSA. *Id.*

---

[4] An SSA representative informed Jones that benefits were last paid to his mother in August 1978. ECF No. 15 at ¶ 79. Jones turned 18 after that date. *Id.*

Jones went to a local SSA office and was told that he should submit a waiver form. *Id.* at ¶ 76. He did so on March 24, 2014. *Id.* On March 27, 2014, Jones received from the SSA, through mail, the waiver form he had submitted with an attached hand-written note, stating: "Unfortunately, we can do nothing about this overpayment. The overpayment was paid in full. No issues outstanding." *Id.* at ¶ 77. Jones revisited the local SSA office on April 8, 2014 and was told that he could not re-open his case. *Id.* at ¶ 78. The SSA representative informed Jones that notices of the overpayment had previously been sent to him at his mother's former address. *Id.* at ¶ 80. Jones last lived at that address in 1980. *Id.* His mother died in 1982. *Id.*

Jones then requested reconsideration. *Id.* at ¶ 81. He received a message from the SSA representative on April 10, 2014 explaining that a paper file no longer existed because SSA destroys them after seven years. *Id.* The representative also said that no electronic records existed because the overpayment notices were sent "prior to the computer days." *Id.* Jones was told that his request for reconsideration would be reviewed on "whatever records they have – although they're not going to have anything going back that far" and they would base their decision "on the case records as they have them today." *Id.*

On April 11, 2014, Jones sent a letter to the SSA payment center requesting that his claim be reopened and appealing the decision to take his tax refund without notification. *Id.* at ¶ 83. He wrote: "I believe that I, John W. Jones am not responsible for the overpayment taken from my Federal Income Tax Return . . . I had no prior knowledge of said debt. A beneficiary (a minor child) cannot be responsible for a payee's debt. . . The office in Cumberland has some information on the computer, [the SSA employee] had printouts but said I could not have them." *Id.* Jones received a response on March 17, 2014 from Barbara Warnick, district manager of the SSA's Cumberland, Maryland field office. It read:

Dear Mr. Jones: This is in response to your inquiry concerning the collection of your overpayment. Our records show that we sent proper notification to you and the Post Office did not return this notice as undeliverable. If the evidence shows that you did not receive the notice, we can refund the money and discuss other repayment options since refunding the money will not eliminate your overpayment. If you think you should not have to pay us back for another reason, you may request a waiver. For us to waive collection of your overpayment[,] two things must be true: It was not your fault you got too much Social Security or Supplemental Security Income money AND [p]aying us back would mean you cannot pay your bills for food, clothing, housing, or medical care, or it would be unfair for some other reason. *Your Reconsideration request was dismissed* by the Payment Center since the correct action should have been a waiver request. To file a Reconsideration, you must feel the overpayment was not a true overpayment and have proof to the contrary. A Waiver request is not an admission of guilt or innocence. It is the correct document needed in this case, since you do not feel you should be held responsible for the overpayment. If you would like our office to waive the overpayment and provide a full refund to you, please fill out the enclosed Waiver request. If we do not receive this form, we cannot waive the overpayment.

*Id.* at ¶ 84 (emphasis added).

### E.   Denise Hart

Plaintiff Denise Hart has never received benefits from the SSA. *Id.* at ¶ 107. In 1976, her

mother died when Hart was fourteen years old. *Id.* Hart believes her father received Social

Security survivor benefits because of her mother's death. *Id.*

On February 28, 2014, Hart received a federal tax refund that was less than she had

expected. *Id.* at ¶ 108. She learned that some of her tax refund had been applied to pay a debt to

the SSA. *Id.* She did not receive notice that she owed any money to the SSA even though she had

received other annual social security earning statements from the SSA. *Id.* at ¶ 109. After calling

the SSA and being told to submit a request for waiver, Hart visited the SSA office in Allentown,

Pennsylvania to submit her request. *Id.* at ¶ 111. She told an SSA representative that she never

received notice of the debt before learning that it had been taken out of her tax refund. *Id.* The representative laughed and told her that the notice would have been sent to the same address where the alleged benefits would have been sent. *Id.* Hart has not lived at the address where her father may have received benefits since 1981. *Id.* At the time the Complaint in this case was filed, Hart had not heard anything in response to her request for waiver. *Id.*

### F.  Plaintiffs' Complaint

Plaintiffs filed an eleven-count Amended Complaint on June 23, 2014. *See* ECF No. 15. After Defendant's Motion to Dismiss was filed, Plaintiffs withdrew Counts I and II of their Complaint. ECF No. 30 at 36. Of the remaining counts, Count III alleges violations of due process under the Fifth Amendment and the *Ex Post Facto* clause of the United States Constitution. ECF No. 15 at ¶ 133. The Complaint alleges that these violations occurred when the SSA took Plaintiffs' tax refunds to repay alleged overpayments that occurred before November 20, 2001. *Id.* The Complaint alleges that before November 20, 2011, recoupment of these alleged overpayments was barred by a ten-year statute of limitations. *Id.* Thus, Plaintiffs claim they had no reason to preserve records necessary to defend against the SSA's allegations of overpayment more than ten years after the overpayments occurred. *Id.* The Complaint requests that the Court grant injunctive relief requiring the SSA (1) to cease and desist from collecting tax refunds to repay alleged overpayments that occurred before November 20, 2001, (2) to notify the IRS, State tax authorities, and credit bureaus that Plaintiffs do not have any lawful debt with the SSA, (3) to instruct those entities to return all tax refunds that should have been paid to Plaintiffs, (4) to take steps to ensure that any negative indications on Plaintiffs' credit ratings be corrected, and (5) to take steps to modify the SSA's policy to ensure no similar violations will occur in the future. *Id.* at ¶ 136. In Count IV, Plaintiffs ask for declaratory relief stating that the

SSA may not recover overpayments that occurred before November 21, 2001 through the Treasury Offset Program and may not report these overpayments as debts to credit bureaus for the reasons outlined in Count III. *Id.* at ¶ 137.

Count V seeks injunctive relief based on due process violations and violations of statutory rights under 31 U.S.C. § 3716(a). *Id.* at ¶ 139. The Complaint alleges that Plaintiffs' rights were violated because the SSA sent notices of alleged overpayments to outdated addresses, which was not a means "one desirous of actually informing the person might reasonably adopt to accomplish it." *Id.* The Complaint contends that the SSA intercepted Plaintiffs' tax refunds without any indication that Plaintiffs received the notices at these outdated addresses. *Id.* Plaintiffs request the same injunctive relief here as requested in Count III. *Id.* at ¶ 142. In Count VI, Plaintiffs seek declaratory relief stating that "the SSA's practice of sending notices by mail prior to instituting enforcement proceedings to collect overpayments, and prior to referring debts for collection to the Department of Treasury and adversely reporting them to credit bureaus, violates the Due Process Clause of the Fifth Amendment to the Constitution, as well as 31 U.S.C. § 3716(a), unless the SSA also receives proof that such notices have actually been delivered to the intended recipients." *Id.* at ¶ 143.

In Count VII, Plaintiffs Jones and Hart allege that the SSA has violated their constitutional due process rights and acted in contravention of 42 U.S.C. § 404(a) by recouping alleged overpayments without proving, providing evidence, or even contending that they actually received any overpayment or had any legal responsibility over any other person who received such an overpayment. ECF No. 15 at ¶ 145. These Plaintiffs contend that they never received Social Security benefits and therefore could not have received an overpayment. *Id.* at ¶ 117. They request the injunctive relief requested in Count V. In Count VIII, the same Plaintiffs seek

declaratory relief stating that "Defendant's practice of recouping alleged overpayments from Plaintiffs . . . without even contending, much less proving, that they actually received any overpayment, or that they had any legal responsibility over any other person who received such an overpayment, violates the Due Process Clause of the Fifth Amendment to the Constitution and 42 U.S.C. § 404(a)." *Id.* at ¶ 149.

Count IX alleges that the SSA violated Hart's and Jones's due process rights under the Fifth Amendment to the Constitution and statutory rights under 42 U.S.C. § 404(a) by recouping alleged overpayments and reporting these alleged debts to credit bureaus when Plaintiff had not reached the age of eighteen at the time the SSA made the alleged overpayments. *Id.* at ¶ 151. Plaintiffs request the injunctive relief outlined in Count III. *Id.* at ¶ 154. In Count X, Plaintiffs seek declaratory relief stating "that the Defendant's practice of recouping alleged overpayments from Plaintiffs and adversely reporting these 'debts' to credit bureaus, despite the fact that Plaintiffs had not reached the age of 18 at the time the SSA made the overpayments which, the SSA now contends, Plaintiffs are legally responsible for repaying, violates the Due Process Clause of the Fifth Amendment to the Constitution and 42 U.S.C. § 404(a)." *Id.* at ¶ 155.

As Grice does not wish to be a class representative, Count XI is Grice's individual request for declaratory judgment that, in relevant part, states:

> . . . (b) the SSA may not recover, through referrals to the Treasury Offset Program, overpayments that occurred prior to November 21, 2001, and may not report these alleged overpayments as unpaid "debts" to credit bureaus, where the SSA did not begin its efforts to recover such overpayments until more than 10 years later; (c) the Defendant's practice of sending notice by mail prior to instituting enforcement proceedings to collect overpayments, and prior to referring debts for collection to the Department of Treasury or reporting them to credit bureaus, violates the Due Process Clause of the Fifth Amendment to the Constitution, as well as 31 U.S.C. § 3716(a), unless Defendant also receives proof that such notice has actually been delivered to the intended recipient;

(d) the Defendant's practice of recouping alleged overpayments from a person and reporting that person's "debt" to credit bureaus without even contending, much less proving, that the person was the actual recipient of the overpayment, or that the person had any legal responsibility over any other person who received such an overpayment, violates the Due Process Clause of the Fifth Amendment to the Constitution and 42 U.S.C. § 404(a); and (e) the Defendant's practice of making a determination of liability for an overpayment, without providing any evidence of any such "overpayment" to the person from whom the Defendant is trying to recoup the alleged overpayment, violates the Due Process Clause of the Fifth Amendment to the Constitution and 42 U.S.C. § 404(a).

*Id.* at ¶ 157.

## II. SUBJECT MATTER JURISDICTION

### A.  STANDARD OF REVIEW

"It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). Thus, "[t]he objection that a federal court lacks subject matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation . . . ." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (citations omitted). Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). Once a Rule 12(b)(1) motion is made, the plaintiff bears the burden of proving that the court has subject matter jurisdiction. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999); *see also Ferdinand–Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010). Because the district court resolves this issue at the Rule 12(b)(1) stage of the proceedings, the plaintiff's burden is to allege a plausible set of facts establishing jurisdiction. *See Davis v. United States,* 597 F.3d 646, 649 (5th Cir. 2009). The court should

grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F. 3d at 647 (citation and internal quotation marks omitted).

## B. DISCUSSION

Defendant challenges the Court's subject matter jurisdiction over Plaintiffs' claims in three ways. ECF No. 25-1 at 8. Defendant believes (1) that Plaintiffs' claims arise under the Social Security Act (the "Act") and Plaintiffs have not exhausted their administrative remedies before filing in federal court as required under the Act, (2) that Plaintiffs' claims are moot because the SSA returned the Plaintiffs' tax refunds, and (3) that Plaintiffs lack standing to pursue their claim that the SSA referred their debts to credit bureaus because the SSA did not take that action. *Id.* at 9, 14 & 16. The Court will address these arguments in turn.

### 1.  Basis for Jurisdiction

Defendant argues that all of Plaintiffs' claims should be dismissed for failure to exhaust their administrative remedies as required under 42 U.S.C. § 405(g). ECF No. 25-1 at 9. Plaintiffs assert that this Court has federal question jurisdiction under 28 U.S.C. § 1331 over Plaintiffs Jones's and Hart's claims. ECF No. 30 at 11. Plaintiffs also contend that this Court has jurisdiction over all of Plaintiffs' claims under the Act, 42 U.S.C. § 405(g). *Id.* at 17. Alternatively, Plaintiffs assert that the Court has mandamus jurisdiction under 28 U.S.C. § 1361. *Id.* at 25.

### a.  Federal Question Jurisdiction

The United States and its agencies, including the SSA, have immunity from suit absent waiver. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The Act waives the SSA's sovereign immunity in limited circumstances. As to claims arising under Title II of the Act, federal courts

16

may review "final decisions" of the SSA. *See* 42 U.S.C. §§ 405(g) & (h). Specifically, 42 U.S.C. § 405(g) of the Act provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . ." 42 U.S.C. § 405(g). 42 U.S.C. § 405(h) limits judicial review to the review permitted under § 405(g). It mandates that "[n]o findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."

Plaintiffs Jones and Hart contend that they are not bound by 42 U.S.C. § 405(h), and that the Court has federal question jurisdiction over their claims pursuant to 28 U.S.C. § 1331. The restriction against federal question jurisdiction under 42 U.S.C. § 405(h) applies where the Act provides "both the standing and the substantive basis for the presentation of a claim . . . ." *Shalala v. Illinois Counsel on Long Term Care, Inc.*, 529 U.S. 1, 12 (2000) (citation and internal quotation marks omitted). This includes "[c]laims for money, claims for other benefits, claims of program eligibility, and claims that contest a sanction or remedy." *Id.* at 14. This administrative scheme is designed to "give the administrative process the first opportunity to resolve disputes over eligibility or the amount of benefits awarded under the Act." *U.S. v. Blue Cross and Blue Shield of Alabama, Inc.*, 156 F.3d 1098, 1103 (11th Cir. 1998). "Proceeding through the agency in this way provides the agency the opportunity to reconsider its policies, interpretations, and regulations in light of those challenges." *Shalala*, 529 U.S. at 24. Thus, even a constitutional question that is connected to the action arises under the act and must be channeled through the agency. *Id.* at 23 ("The fact that the agency might not provide a hearing for that *particular*

*contention,* or may lack the power to provide one . . . is beside the point because it is the 'action' arising under the Medicare Act that must be channeled through the agency.") (citations omitted) (emphasis in original).[5] Different claims may rest upon individual fact-related circumstances, may dispute agency policy determinations, or may involve the application, interpretation, or constitutionality of interrelated regulations or statutory provisions, while still all falling under the Act. *See id* at 14.

For example, in *Jarret v. United States*, 874 F.2d 201, 202–03 (4th Cir. 1989), the Court found that a widow could not bring a claim in federal court against the SSA on behalf of her husband for intentional infliction of emotional distress ("IIED") based on the alleged wrongful termination of her husband's SSA benefits. In finding that the IIED claim arose under the SSA, the court said: "A trial of the present action would require a relitigation of the denial of social security benefits. One question presented would be whether at the time he was notified that his disability benefits would be stopped, Mr. Jarrett was physically able to engage in substantial gainful employment. Except for a direct claim for benefits under the Act, nothing could be more clearly a claim arising under the Social Security Act than the present action." *Id.* at 204–05. Similarly, in *McCarthy v. Apfel*, 221 F.3d 1119, 1122–24 (9th Cir. 2000), the plaintiff asserted that his claim did not arise under the Act because he was not, at that time, receiving Social Security benefits. The court rejected this argument because plaintiff was a party to a Social Security hearing and any individual who is a party to such a hearing is entitled to judicial review under 42 U.S.C. § 405(g). *Id.* at 1124.

Here, Plaintiffs Jones and Hart argue that their claims do not fall under the Act because they never received or sought benefits from the SSA. ECF No. 30 at 11–12. To be sure, while

---

[5] 42 U.S.C. § 1395ii makes 42 U.S.C. §405(h) of the SSA applicable to the Medicare Act.

Jones and Hart may disagree with the decision, all parties agree that the SSA has determined that Jones and Hart owe money to the SSA because of an overpayment of social security benefits. The SSA's determination of an overpayment is an action taken under the provisions of the Act. Thus, litigation of the determination would revolve around the Act. It would require examining the SSA's finding of an overpayment. The questions presented would be if and when Plaintiffs received benefits and if and when they may have received an overpayment. *Cf. Jarret*, 874 F.2d at 204–05. Also, Plaintiffs have standing to challenge the overpayment through the Act and their requested forms of relief, proper notice or elimination of the overpayment, are rooted in the Act. *See also Marks v. United States*, No. C07-5679 FDB, 2008 WL 803150 at *5 (W.D. Wash. Mar. 24, 2008) ("Jurisdiction to consider any claim regarding overpayment and denial of benefits lies exclusively under 42 U.S.C. 405(g)."). Thus, Plaintiffs are parties to the SSA's determination, regardless of their challenge to the SSA's determination that they received benefits or overpayments. Indeed, the parties' disagreement over whether the SSA had the right to take an action against Plaintiffs falls under the statute governing the SSA. *See* 42 U.S.C. § 404(a)(1)(A) (". . . the Commissioner of Social Security shall  . . . obtain recovery by means of reduction in tax refunds based on notice to the Secretary of the Treasury."). Plaintiffs' claims therefore arise under the Act.

### b.  The Social Security Act – 42 U.S.C. § 405(g)

Understanding that the four Plaintiffs' claims arise under the Act, Defendant asserts that Plaintiffs failed to exhaust their administrative remedies as required under the Act. Specifically, under 42 U.S.C. § 405(g), an individual may obtain review of the SSA's decision in federal court after a "final decision" of the SSA made after a "hearing." *See* 42 U.S.C. § 405(g). The Supreme Court has found that this statute contains two elements. The first element is "that a claim for

benefits shall have been presented to the [SSA]" and the second element is "that the

administrative remedies prescribed by the [SSA] be exhausted." *Mathews v. Eldridge,* 424 U.S.

319, 328 (1976). The first element (presentment) is nonwaivable while the second (exhaustion)

may be waived by the SSA's Commissioner[6] or by a federal court.[7] *Id.* at329–30. Exhaustion is

traditionally required "as a matter of preventing premature interference with agency processes,

so that the agency may function efficiently and so that it may have an opportunity to correct its

own errors, to afford the parties and the courts the benefit of its experience and expertise and to

compile a record which is adequate for judicial review." *Fitzgerald v. Schweiker*, 538 F.Supp.

992, 998 (D. Md. 1982) (citing *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)). Thus, courts will

waive the exhaustion requirement only under limited circumstances. Several cases have

expounded on the principles for waiving exhaustion.

  In *Eldridge*, the SSA terminated the plaintiff's disability benefits, the plaintiff objected to

termination in writing, and the plaintiff was sent notice of his right to seek reconsideration. 424

U.S. at 324 & 329. He did not seek reconsideration but commenced suit in federal court. *Id.* at

324–25. Plaintiff argued that the SSA's procedure of terminating benefits without first holding a

---

[6] The functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security effective March 31, 1995. *See* 42 U.S.C. §§ 901–09.

[7] Defendant contends that Plaintiffs cannot waive the exhaustion requirement because the Supreme Court in *Shalala*, 529 U.S. at 13–24, found that exhaustion of administrative claims is required even if the claim is collateral to any claim for benefits. This is a misinterpretation of the Supreme Court's holding. The Supreme Court in *Shalala* held that if the claim arose under the Social Security or Medicare Acts, a plaintiff cannot bring a claim under 28 U.S.C. § 1331 (federal question) but must bring their claim under 42 U.S.C. § 405(g) (Social Security Act's grant of judicial review after exhaustion or remedies). *Shalala* did not foreclose permitting a plaintiff to proceed under 28 U.S.C. § 405(g) after waiving the requirement of exhaustion of administrative remedies. *See* 529 U.S. at 14–15 ("In *Eldridge* . . . [t]he Court characterized the constitutional issue the respondent raised as 'collateral' to his claim for benefits, but it did so as a basis for requiring the agency to excuse, where the agency would not do so on its own, some (but not all) of the procedural steps set forth in § 405(g).").

hearing was unconstitutional. *Id.* In addressing the district court's jurisdiction to hear the case, the Court found that plaintiff had fulfilled the nonwaivable presentment requirement when he wrote a letter in response to the SSA's tentative determination and argued that the SSA should not terminate his benefits. *Id.* at 329. The Court also found that, although plaintiff "could have obtained full administrative review of the termination of his benefits[,]" waiver of the remaining exhaustion requirements was permitted. *See id.* at 328. The Court explained that cases may arise "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Id.* at 330.

The Supreme Court's decision to waive exhaustion was based on several factors. For one, the Court reasoned that because the plaintiff was challenging the SSA's practice of not requiring a hearing before terminating benefits, it would be "unrealistic to expect that the Secretary [of Health, Education, and Welfare] would consider substantive changes to the administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context." *Id.* at 330. Thus, it was important to the Court's decision that plaintiff's challenge to the lack of a hearing before termination of benefits was collateral to the plaintiff's substantive claim of entitlement. *Id.* at 330–31.

Second, the Court found that the claim to a predeprivation hearing "rests on the proposition that full relief cannot be obtained at a post deprivation hearing." *Id.* at 331. The Court determined that the plaintiff's dependency on the disability benefits raised a "colorable claim that . . . erroneous termination would damage him in a way not recompensable through retroactive payments." *Id.* at 331. Further, the Court explained that if the plaintiff had gone through the administrative process and the SSA had denied or granted him benefits, it would not

answer his constitutional challenge that he was entitled to a hearing before the initial termination occurred. *Id.* at 331–32.

In *Fitzgerald*, 538 F.Supp. at 998, the U.S. District Court for the District of Maryland also waived the exhaustion requirements. In waiving exhaustion, the court rejected the argument that the Supreme Court in *Eldridge* set forth rigid prerequisites for waiving exhaustion. Instead, the court found that *Eldridge* approved of a "highly practical and results-oriented approach" where the court balances the "claimant's interest in the prompt resolution of an issue against the general principle that an agency's procedures should be permitted to run their course." *Id.* at 997 (citation omitted); *See also Adams v. Califano*, 474 F.Supp. 974, 981–83 (D. Md. 1979) (waiving exhaustion where claimants alleged that the SSA's notice was insufficient in that it did not explain the reasons for the decision because the claim was a constitutional one, the claim was collateral to substantive claim to entitlement to benefits, and further administrative action would have been futile because the SSA was unlikely to change its own interpretation of its regulation because of one appeal).

In *Bowen v. New York*, 476 U.S. 467, 473–75 (1986), the Supreme Court was again confronted with circumstances that required waiver of exhaustion. In their lawsuit, the plaintiffs contended that the SSA followed a policy of presuming that if a potential recipient's impairment did not fall under a predetermined list of specific impairments, he or she could do unskilled work and was not eligible for social security disability benefits. *Id.* at 473. The plaintiffs argued that this policy was unconstitutional and violated the SSA's own policy of making an individual assessment of each potential social security recipient. *Id.*

The Supreme Court permitted waiver of the exhaustion requirements. *Id.* at 482–86. As an initial matter, because many of the plaintiffs were unaware of the SSA's policy underlying the

decisions, they failed to file appeals within sixty days of the SSA's decision. *Id.* at 482. The

Court found that these plaintiffs could still file a claim in federal court because they "could not

[have] attack[ed] a policy they could not [have] be[en] aware existed." Thus, the Court said it

would be "unfair to penalize these claimants for not exhausting . . ." *Id.* As for the plaintiffs who

could have, but did not exhaust their administrative remedies, the Court also found waiver

appropriate. *Id.* at 483. The Court determined that the plaintiffs' challenge was not to the SSA's

decision not to award benefits but to the SSA's failure to follow applicable regulations. *Id.*

     The Supreme Court went on to explain that application of the exhaustion doctrine is to be

"intensely practical." *Id.* at 484 (citing *Eldridge*, 424 U.S. at 331) (internal quotation marks

omitted). The Court stated that "the ultimate decision of whether to waive exhaustion should not

be made solely by mechanical application of the *Eldridge* factors, but should also be guided by

the policies underlying the exhaustion requirement." *Id.* In looking at exhaustion from a practical

perspective, the Court reasoned that the purpose of exhaustion would not be served by requiring

exhaustion of a challenge to a systemwide policy that was inconsistent with applicable

regulations. *Id.* at 485. It found that exhaustion would be futile because the SSA would unlikely

disagree with its own policy so there was "nothing to be gained from permitting the compilation

of a detailed factual record, or from agency expertise." *Id.*

     Here, one of the four Plaintiffs—Verbich—has not satisfied the nonwaivable presentment

requirement because he failed to note any disagreement with the agency's decision after he

learned that the overpayment debt had been taken from his tax refund. It is not enough that

Verbich was notified about the debt through the loss of a portion of his tax refund and called the

SSA to find out why the portion was taken. ECF No. 15 at ¶¶ 67–72. Although the presentment

requirement is not an onerous one, Verbich only requested more information on how much he

owed and why he had not been notified. *See* ECF No. 15 at ¶¶ 71–72. Without having presented

a dispute with the SSA's decision to the SSA, this Court does not have jurisdiction over his

claims. *See Harper v. Social Security Admin.*, 1:07-cv-1298-DFH-WTL, 2008 WL 216600 at \*3

(S.D. Ind. Jan. 24, 2008) (finding no final decision from SSA where plaintiff did not contest

notice of overpayment, seek waiver, or respond in any way); *Merrifield v. United States*, 07-987

(JBS), 2008 WL 906263 at \*18 (D.N.J. Mar. 31, 2008) (finding failure to notify agency of

dispute over overpayment constituted failure to satisfy the presentment requirement); *Cf. Heckler

v. Lopez*, 464 U.S. 879, 882 n. 2 (1983) (finding class members completion of questionnaire

before SSA's termination decision indicating in writing that they remained disabled and desired

benefits satisfied presentment requirement) *Hinton v. Sullivan*, 737 F.Supp. 232, 237 (S.D.N.Y.

1990) (same). Verbich is DISMISSED from this action for failure to exhaust administrative

remedies.

The remaining three Plaintiffs—Hart, Jones, and Grice—have presented their challenges

to the SSA and satisfied the presentment requirement. Hart and Jones both filed either a request

for reconsideration of the overpayment decision or a request for waiver of the overpayment. *See*

ECF No. 15 at ¶¶ 73–89, 107–111. *Cf. St. Francis Hosp. v. Sebelius*, 874 F.Supp. 2d 127, 131

(E.D.N.Y. 2012) (finding that a plaintiff satisfies the "nonwaivable jurisdictional element by

initiating the administrative appeals process regarding overpayment decisions"). Grice's actions

create a closer call. Grice called the SSA after receiving notice of the loss of her tax refund. The

SSA representative tried but failed to waive the overpayment over the phone, and Grice was later

told that a waiver request would be denied. ECF No. 15 at ¶¶ 49–66. Even in the absence of

documentary evidence, Grice necessarily requested such a waiver because the representative

tried to waive the overpayment over the phone and Grice was told that a waiver request would be

denied. *See Eldridge*, 424 U.S. at 329 (finding presentment satisfied where plaintiff objected in writing to termination of benefits).  Thus, Hart, Jones, and Grice have satisfied the nonwaivable administrative process requirement of 42 U.S.C. § 405(g).

The Court next turns to the procedural exhaustion requirements as it relates to the three remaining Plaintiffs' claims. In Counts V, VI, and portions of XI, Plaintiffs allege that the SSA did not afford them notice before their tax refunds were used to recoup alleged overpayments. *See* ECF No. 15 at ¶¶ 138–43; ECF No. 30 at 30–38. In Counts III–X, and portions of XI, Plaintiffs allege, in different ways, that the SSA violated the Constitution and applicable law when it tried to and did collect alleged overpayments when the overpayments were over ten years old, when the alleged recipient never received social security benefits, or when the alleged recipient was under eighteen. ECF No. 15 at ¶¶ 132–36 & 144–57. Defendant contends that all Plaintiffs' claims should be dismissed because they did not exhaust their administrative remedies by requesting reconsideration after they learned of the SSA's overpayment decision. ECF No. 25-1 at 11–12.

In balancing the Plaintiffs' interest in prompt resolution against the general principal that the agency's procedures should be permitted to run their course, *see Eldridge*, 424 U.S. at 330, this is a case where waiver of the exhaustion requirement is appropriate. Although this case may not fit squarely with prior factual scenarios that warranted exhaustion, the principles for waiving exhaustion are present.

The Court first looks at the Plaintiffs' interest in prompt resolution of their claims. Here, the SSA determined that each Plaintiff owed money to the SSA because of an overpayment. In each case, Plaintiffs assert that they did not receive the SSA's notice of the overpayment and its intent to collect the overpayment through tax refunds because it was sent to over-ten-year-old

addresses. ECF No. 15 at ¶¶ 49, 80, & 111. Due to the failure to receive the notice, each of these individuals missed the sixty-day deadline to request the right to present evidence that the overpayment was not past due or was not legally enforceable. *See* 20 C.F.R. § 404.522(a). In all of the cases, the first notice Plaintiffs received of the overpayment was the SSA's recoupment of the alleged overpayment through Plaintiffs' tax refunds. ECF No. 15 at ¶¶ 47, 75, & 108. Although the SSA has since returned Plaintiffs' tax refunds, the SSA maintains that Plaintiffs still owe the amount of the overpayment. *See* ECF Nos. 30-3–30-5. Further, when Plaintiffs have tried to challenge the SSA's decision at the administrative level, they have been turned away. This leaves Plaintiffs with a debt hanging over them without any resolution in sight. Indeed, at least one Plaintiff, Grice, alleges this debt has been reported to credit bureaus. *See* ECF No. 15 at ¶ 53. Thus, Plaintiffs have a strong interest in prompt resolution of their claims, which challenge the SSA's ability to collect and its method of collecting the overpayment.

Turning to the SSA's interest in exhaustion, the SSA has, in all practical respects, given its final decision on this matter. Plaintiffs have attempted to proceed through administrative channels and the SSA has largely frustrated their efforts to exhaust those remedies. Although the SSA now contends that its regulations permit, and Plaintiffs should have sought, reconsideration of the decision to start the administrative process, various SSA representatives told Plaintiffs either that reconsideration was *not* an option or that waiver was the *only* option.[8] In the clearest example, Plaintiff Jones sought waiver and was told that there was nothing the SSA could do

---

[8] In Grice's case, she visited her local SSA office and was told that she could request a waiver but it would be denied. ECF No. 15 at ¶ 60. In Jones's case, he requested a waiver, which was denied because the overpayment had been repaid and the case was closed. *Id.* at ¶ 77. He then requested reconsideration and was told that it was denied because he should have made a request for waiver. *Id.* at ¶ 84. Finally, in Hart's case, she was told to, and did, request a waiver of the overpayment and has not received a response from the SSA. *Id.* at ¶ 111.

because the account balance was paid in full and the issue was closed. *See* ECF No. 15 at ¶ 77.

According to Plaintiff Jones, he also requested reconsideration, claiming a minor child could not

be responsible for a payee's debt, and was told that he could not request reconsideration because

"he had to feel the payment was not a true overpayment."[9] *Id.* at ¶ 84. The other Plaintiffs were

not given the option of reconsideration. *See* ECF No. 15 at ¶¶ 60 & 110. The SSA's actions are

therefore the "equivalent to a final decision" from the SSA on the issue of Plaintiffs'

overpayment status. *See Fitzgerald*, 538 F.Supp. at 998. In these circumstances, requiring

Plaintiffs to now request reconsideration or waiver of the overpayment would be requiring

"claimants to exhaust administrative remedies merely to enable them to receive the procedure

they should have been afforded in the first place." *See Bowen*, 476 U.S. at 484. It would be

difficult to find a better case for waiving exhaustion then one where the SSA did not permit

exhaustion in the first place.

In fact, Plaintiffs' failure to receive notice may have precluded review of the SSA's

decision unless exhaustion is waived. The SSA's current argument that Plaintiffs could still seek

reconsideration, ECF No. 25-1 at 12, appears not only contrary to Plaintiffs' real-life experiences

with the SSA, but also at odds with the SSA's regulations. The regulations are not clear on

---

[9] The Court may not even need to waive the exhaustion of administrative remedies for Plaintiff
Jones because it appears that he has already fully exhausted his administrative remedies. Under
the SSA's regulations, if an individual contests that an overpayment is legally enforceable after
the SSA notified the individual of the agency's intent to recoup the overpayment through a tax
refund, the SSA will make a decision on whether the overpayment is past due and legally
enforceable based on review of the written record. 20 C.F.R. § 404.522(c). That decision is the
SSA's final decision on overpayment; the regulation states that "[i]ssuance of these findings
concerning whether the overpayment or part of the overpayment is past due and legally
enforceable is the final Agency action with respect to past-due status and enforceability of the
overpayment." 20 C.F.R. § 404.523(a). Here, the SSA told Jones that his request for
reconsideration was dismissed. This decision could be considered the final agency action on
whether the overpayment was legally enforceable.

27

whether Plaintiffs can challenge a decision to collect an overpayment through a tax refund more

than sixty days, let alone years, after the SSA sent notice of its intent to collect the overpayment

through a tax refund. *See* 20 C.F.R. § 404.522(a). The regulations provide that the SSA may

entertain a reconsideration request more than sixty days after notice of the "initial decision" of

overpayment for good cause, however, the regulations do not provide that the SSA will entertain

a challenge to an overpayment decision more than sixty days after the SSA sends notice of its

intent to collect the overpayment through the individual's tax refund. *Compare* 20 C.F.R. §

404.909 & 20 C.F..R. § 404.911 (outlining the procedure for requesting reconsideration of the

initial determination of an overpayment); *with* 20 C.F.R. § 404.521 & 20 C.F.R. § 404.524(a)

(outlining the procedure for asserting that an alleged overpayment is not past due or not legally

enforceable after the SSA sends notice of its intent to collect the overpayment through tax

refund). If the SSA's regulations do not permit Plaintiffs to challenge the overpayment decision

more than sixty days after the SSA sends its notice that it will recoup the overpayment through

the Plaintiffs' tax refunds, then Plaintiffs would not be able to exhaust their administrative

remedies because they did not receive the notice. However, it would be "unfair to penalize these

claimants for not exhausting" when they were not aware of the SSA's intent to collect the

overpayment through tax refunds. *See Bowen*, 476 U.S. at 482.

In addition, allowing the SSA to eliminate Plaintiffs' debts through waiver would not

answer Plaintiffs' challenges to the SSA's current procedures. Even if Plaintiffs were still able to

request waiver of the overpayment, which Defendant cites as one of Plaintiffs' options, Plaintiffs

still would be unable to present an argument that the overpayments are not past due or not legally

enforceable. *See* 20 C.F.R. § 404.522(a).[10] Thus, even if Plaintiffs received a waiver, the question of whether Plaintiffs should have been able to challenge the legality of the overpayment would be left unanswered. *Cf. Eldridge*, 424 U.S. at 331–32 (". . . denying Eldridge's substantive claim for other reasons or upholding it under other provisions at the post-termination stage, would not answer his constitutional challenge.") (internal citation and quotation marks omitted); *Reed v. Heckler*, 756 F.2d 779, 784 (10th Cir. 1985) (finding that granting "waivers" for other reasons would not answer the constitutional challenge raised).

Further, Plaintiffs' claims are not challenges to individual procedures taken against one claimant. Rather than challenging an individual overpayment assessment, Plaintiffs challenge the SSA's systematic approach to the collection of overpayments as a violation of constitutional and statutory law. In that way, Plaintiffs' claims are collateral to any individual determination of an overpayment or any personal objection to the overpayment decision. Thus, even if the SSA reviewed the individual claims, it would be unlikely that the SSA would change its procedures for deciding whom to collect overpayments from simply because one claimant appealed and challenged the process.[11] *See Adams*, 474 F.Supp. at 982 ("The Secretary can, of course, change his own regulations or his interpretation of those regulations, but it is clear that any reinterpretation or change will not occur during the course of a disability claim appeal.").

---

[10] Eliminating the overpayment through waiver requires finding that the individual is without fault in causing the overpayment and recovering the overpayment would be against equity and good conscience. 20 C.F.R. § 404.506(c). It does not, however, allow Plaintiffs to challenge whether there was, in fact, an overpayment.

[11] In fact, Plaintiffs alleged that the SSA reported that it has been pursuing recovery of overpayment debts that are over ten years old through tax refunds from approximately 400,000 people. ECF No. 15 at ¶ 112.

In line with the principles laid out in *Eldridge*, *Fitzgerald*, and *Bowen*, the balance of the claimants' interests against the agency's interests favors waiver of the exhaustion requirements in this case. For the reasons explained, the exhaustion requirements are waived for Counts III–X, and the relevant portions of XI.

### c.  Mandamus

Plaintiffs argue that this Court also has jurisdiction over all Plaintiffs' claims under 28 U.S.C. § 1361. "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Court for the N. District of Cali.*, 426 U.S. 394, 402 (1976). "Mandamus is an ancient remedy, said to lie only to compel the fulfillment of a duty which is ministerial, plainly and positively ascertained, and free of doubt." *Morris v. Weinberger*, 401 F.Supp. 1071, 1077 (D. Md. 1975) (citation omitted). "Generally speaking, before the writ of mandamus may properly issue three elements must coexist: (1) a clear right in the plaintiff to the relief sought; (2) a clear duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Id.* (citation omitted). These elements restrict mandamus to circumstances where a plaintiff "has exhausted all other avenues of relief" and where "the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (citation omitted). Here, the Act provides Plaintiffs with avenue of review in 28 U.S.C. § 405(g). *See* discussion *supra* II.B.1.b. In addition, the Court does not find a clear duty on the part of the Defendant to refrain from collecting overpayments. For these reasons, the Court does not assert mandamus jurisdiction over Plaintiffs' claims.

### 2.  Mootness

Defendant argues that this case should be dismissed as moot because the SSA returned Plaintiffs' tax refunds. ECF No. 25-1 at 14. "Under Article III of the Constitution[,] [federal

courts] may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317

(1988) (citations omitted). A case is no longer an actual, ongoing controversy—it is moot—

"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in

the outcome." *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (citing *Powell v.*

*McCormack*, 395 U.S. 486, 496 (1969)) (internal quotation marks omitted). The requirement of

an actual, ongoing controversy subsists through all stages of federal judicial proceedings. *Id.*

(citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). However, "[w]here one of

the several issues presented becomes moot, the remaining live issues supply the constitutional

requirement of a case or controversy." *Powell*, 395 U.S. at 497; *see also Univ. of Texas v.*

*Camenisch*, 451 U.S. 390, 394 (1981). In declaratory judgment actions, to satisfy the case or

controversy requirement the dispute must be "definite and concrete, touching the legal relations

of parties having adverse legal interests, and that it be real and substantial and admit of specific

relief through a decree of conclusive character, as distinguished from an opinion advising what

the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentch, Inc.*, 549

U.S. 118, 127 (2007) (citation and internal quotation marks omitted).

Defendant incorrectly constrains Plaintiffs' requests for relief to refunding Plaintiffs' tax

refunds. ECF No. 25-1 at 15. As such, Defendant asserts that the case is moot because, in line

with the SSA's internal policy that the SSA return withheld tax refunds when the individual

demonstrates that the notice was not delivered, the SSA has returned Plaintiffs' tax refunds. *Id.*

Yet, Plaintiffs still have legally cognizable interests in the outcome of this case. While the SSA

has returned the Plaintiffs' refunds, the SSA maintains that Plaintiffs owe money due to

overpayments. A letter accompanying the return of Plaintiffs' tax refunds stated that "[t]his

refund does not eliminate your overpayment. If you want to discuss repayment options or request

a waiver, please contact us. To request a waiver, you can also complete the enclosed SSA-632 waiver form." *See* ECF Nos. 30-3 & 30-5. One Plaintiff received a letter simply asking for payment right away and did not discuss reconsideration or waiver. *See* ECF No. 30-1. The SSA's letters do not provide Plaintiffs the ability to challenge the legality of the overpayment. Thus, the SSA could take Plaintiffs' refunds in the following tax year. A defendant's steps to moot injunctive relief do not moot a plaintiff's case when the Defendant is free to return to its old ways. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189 (2000) ("a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. . . . If it did, the courts would be compelled to leave the defendant 'free to return to his old ways.") (citation omitted). As the SSA still maintains that the Plaintiffs owe debts to the agency, Plaintiffs' claims are real and substantial. A judgment in Plaintiffs' favor would provide specific relief and would not simply be an opinion advising what the law would be upon a hypothetical state of facts. This case is not moot and the Court retains jurisdiction.

### 3. Standing

Defendant contends that Plaintiffs do not have standing to pursue any claim related to the SSA's alleged referral of Plaintiffs' debt to credit bureaus because the agency did not take such action. ECF No. 25-1 at 16. A plaintiff must have standing to maintain an action in federal court. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) (finding that lack of standing is a defect in subject matter jurisdiction). "Plaintiffs bear the burden of establishing standing." *Id.* at 181 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Standing requires a demonstration of an injury in fact, which must be "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560.

"When standing is challenged on the pleadings, [the Court] accept[s] as true all material allegations of the complaint and construe[s] the complaint in favor of the complaining party." *S. Walk at Broadlands Homeowner's Ass'n, Inc.*, 713 F.3d at 181–82 (quoting *David v. Alphin,* 704 F.3d 327, 333 (4th Cir.2013)) (internal quotation marks omitted). However, the Court will dismiss factual allegations that are nothing more than "legal conclusions" or "naked assertions." *Id.* at 182 (citing *David*, 704 F.3d at 333) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009)) (internal quotation marks omitted).

Plaintiffs baldly allege that their constitutional rights were violated by the SSA's referral of the alleged payments to credit bureaus. ECF No. 15 at ¶¶ 130–31, 133, 136, 139, 142–43, 145, 148–49, 151, 154–55, & 157. These are naked assertions and only one Plaintiff, Grice, alleges anything more. Grice asserts that she was told by an SSA representative that the SSA had reported her alleged debt to three credit bureaus. *Id.* at ¶ 53. Taking this allegation as true, even if Defendant disputes its veracity, Plaintiff Grice has alleged an injury in fact in asserting that the SSA referred her alleged debt to credit bureaus. The remaining two Plaintiffs, Hart and Jones, however, have not alleged any facts showing that the SSA referred their alleged debt to credit bureaus. Indeed, in their Opposition to Defendant's Motion to Dismiss, Plaintiffs do not respond to Defendant's argument that Plaintiffs fail to allege that the SSA referred their debts to credit bureaus. *See Ferdinand–Davenport*, 742 F. Supp. 2d at 777 ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons [her] claim."); *Mentch v. E. Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997) (holding that failure to address defendant's arguments for summary judgment in opposition brief constituted abandonment of claim). The portions of Hart and Jones' claims alleging that the SSA violated constitutional and statutory law by referring their alleged debt to credit bureaus are DISMISSED.

33

## III. FAILURE TO STATE A CLAIM

### A. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to present a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss invoking 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678–79; *Twombly*, 550 U.S. at 545 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.") (citation omitted).

Fed. R. Civ. P. 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations

devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Also, "[a] motion to dismiss is 'rarely appropriate in a declaratory judgment action[.]'" *Allen v. Gen. Star Indem. Co.*, WDQ-11-1826, 2012 WL 764418 at *8 (D. Md. Mar. 6, 2012) (citing *120 W. Fayette St., LLLP v. Mayor & City Council of Balt. City,* 992 A.2d 459, 487 (Md. 2010)).

> The test of the sufficiency of the bill is not whether it shows that the plaintiff is entitled to the declaration of rights or interest in accordance with his theory, but whether he is entitled to a declaration at all; so, even though the plaintiff may be on the losing side of the dispute, if he states the existence of a controversy which should be settled, he states a cause of suit for a declaratory decree.

*Id.* (citing *120 W. Fayette St., LLLP*, 992 A.2d at 487–88)) (internal citation and quotation marks omitted).

## B. DISCUSSION

### 1. Counts III & IV

In Counts III & IV, and portions of XI[12] Plaintiffs allege violations of due process under the Fifth Amendment and the *Ex Post Facto* clause of the United States Constitution stemming from the SSA's use of tax offsets to collect debts that were over ten years old. ECF No. 15 at ¶ 133. Both parties agree that, before 2011, the SSA's regulation provided that the SSA would refer overpayment debts to the Treasury for offset against tax refunds no later than ten years after the overpayment had accrued. *See* 20 C.F.R. § 404.520(b) (2011). The parties also agree that the SSA removed this time restriction in 2011. *See* 20 C.F.R. § 404.520(b). Plaintiffs allege that the

---

[12] Plaintiffs have withdrawn Counts I and II of their First Amended Complaint. ECF No. 30 at 30.

removal of that time restriction and the retroactive effect of the removal violates their constitutional rights. *See* ECF No. 15 at ¶ 132–37.

The Fifth Amendment's Due Process Clause prohibits the United States, including its agencies, from "depriving any person of property without due process of law." *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (internal quotation marks omitted). To state a claim for a substantive due process violation, Plaintiffs must "demonstrate (1) that they had property or a property interest; (2) that the [SSA] deprived them of this property or property interest; and (3) that the [SSA]'s action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 827 (4th Cir. 1995) (citing *Love v. Pepersack,* 47 F.3d 120, 122 (4th Cir.1995) ("Substantive due process is a far narrower concept than procedural; it is an absolute check on certain governmental actions notwithstanding 'the fairness of the procedures used to implement them.'" (internal quotation marks omitted)). Here, the SSA deprived Plaintiff of a property interest (money) by intercepting Plaintiffs' tax refunds. Thus, the pivotal question remaining is whether Plaintiffs have adequately stated facts that state a plausible claim that the SSA's action—the lifting of its self-imposed limitations period for collecting overpayments through tax offsets and the retroactive collection of overpayment—falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the action.

In *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 315–16 (1945), the Supreme Court found that it was not a per se offense against the Due Process Clause to lift the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time. Although lifting a limitations period may not be a per se violation of an individual's Due Process rights, the Supreme Court left open the possibility that "[s]ome rules of law probably could not be changed retroactively

without hardship or oppression." *Id.* at 315. "Special hardships" or "oppressive effects" may be present where an individual took a course of action on the assumption that the limitations period would continue or, conversely, an individual would have taken a different course of action if a change in the limitations period could have been foreseen. *Id.* at 316.

Here, Plaintiffs allege that because the SSA's regulation included a ten-year time limitation for collecting an overpayment debt, Plaintiffs did not have ". . . any reason to try to preserve income records, bank records, or any other relevant testimony or information" regarding an overpayment that occurred more than ten years before the SSA's collection efforts. ECF No. 15 at ¶ 133. Because the SSA's right to collect Plaintiffs' alleged overpayments is alleged to have accrued more than ten years before the limitations period was lifted, Plaintiffs contend that it is now "virtually impossible for anyone to effectively defend against the SSA's claims for liability." *Id.* The SSA responds that Plaintiffs did have a reason to maintain their records because the SSA's regulation only limited the SSA's time for collecting overpayments through tax offsets; the SSA was at all times free to collect the overpayments through other means. ECF No. 25-1 at 23.

Under the Court's standard of review for a motion to dismiss, the Court must keep in mind that it cannot "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley*, 464 F.3d at 483 (citation and internal quotation marks omitted). Instead, the Court must accept Plaintiffs' allegations as true and draw all reasonable inferences from those facts in favor of Plaintiffs in determining whether Plaintiffs have stated a plausible claim for relief. Here, if Plaintiffs did assume the SSA's self-imposed limitation to collect overpayments through tax offsets would remain in effect, and failed to preserve evidence that would show an overpayment did not occur, then it is plausible that a retroactive change in

37

the limitations period may have resulted in "special hardships" or "oppressive effects" on

Plaintiffs. *Cf. San Diego Gas & Elec. Co. v. City of San Diego*, 450 U.S. 621, 643 n. 7 (1981)

(discussing how trial court made a factual finding that an action was burdensome and

oppressive); *In re Perkins*, 03-80777C-7D, 03-9075, 2004 WL 3510116 at *3 (M.D.N.C. May

20, 2004) (determining whether plaintiff was suffering undue hardship was a factual dispute).

Thus, Plaintiffs have stated a claim for violation of their due process rights.[13]

### 2.  Counts V & VI

In Counts V & VI, and portions of XI, Plaintiffs assert that the SSA violated their

procedural due process right to notice when it sent notices of alleged overpayments and its intent

to recoup the overpayment through tax refunds to outdated addresses and thereafter collected an

alleged overpayment from Plaintiffs' tax returns. ECF No. 15 at ¶ 139.

Due process of law requires that the individual whose property interest is at stake receive

"notice and an opportunity to be heard." *United States v. James Daniel Good Real Property*, 510

U.S. 43, 48 (1993). "Due process is flexible and calls for such procedural protections as the

particular situation demands." *Eldridge*, 424 U.S. at 334 (1976) (citing *Morrissey v. Brewer*, 408

---

[13] Plaintiffs also stated in their Complaint that the SSA's retroactive actions violate the Constitution's ex post facto clause. ECF No. 15 at ¶ 133. "The *Ex Post Facto* Clause, which 'forbids the application of any new punitive measure to a crime already consummated,' has been interpreted to pertain exclusively to penal statutes." *Kansas v. Hendricks*, 521 U.S. 346, 370 (1997) (citing *California Dept. of Corrections v. Morales,* 514 U.S. 499, 505 (1995) (quoting *Lindsey v. Washington,* 301 U.S. 397, 401 (1937))) (internal quotation marks omitted). Other than citing the clause, Plaintiffs' Complaint does not note any facts to show that the SSA's regulation concerning tax offsets is a penal statute. Even in their Opposition to Defendant's Motion to Dismiss, Plaintiffs do not respond to Defendant's argument that its regulations do not violate the Constitution's *Ex Post Facto* clause. Thus, Plaintiffs have failed to state a claim for violation of the *Ex Post Facto* clause and have also abandoned the claim. *See Ferdinand–Davenport*, 742 F. Supp. 2d at 777 ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons [her] claim."); *Mentch*, 949 F. Supp. at 1247 (holding that failure to address defendant's arguments for summary judgment in opposition brief constituted abandonment of claim). Counts VIII & IV are limited to allegations of due process violations.

U.S. 471, 481 (1971)) (internal quotation marks and parentheses omitted). Notice is constitutionally defective under the Due Process Clause if it is not "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citation omitted). Thus, "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315. Under this standard, the "notice required will vary with circumstances and conditions." *Walker v. City of Hutchinson, Kan.*, 352 U.S. 112, 115 (1956).

Here, Defendant contends that Plaintiffs have failed to state a claim for a violation of due process because the Supreme Court has made clear that the Due Process Clause does not require actual notice before the government takes action. ECF No. 25-1 at 25 (citing *Jones v. Flowers*, 547 U.S. 220, 226 (2006)). This argument mischaracterizes the totality of Plaintiffs' claims.[14] While Plaintiffs' request for declaratory relief may be overly broad, Plaintiffs' allegation is that the sending of notice to addresses that were over ten years old was not a means that the SSA should have used if it actually wanted to inform Plaintiffs of the overpayment decisions. ECF No. 15 at ¶ 139; *see also* ECF No. 30 at 30. Plaintiffs allege that the SSA's sending of notice to addresses that were over ten years old was not a means that the SSA should have used if it actually wanted to inform Plaintiffs of the overpayment decisions. ECF No. 15 at ¶ 139; *see also* ECF No. 30 at 30. Plaintiffs allege that it would have been reasonable for the SSA to send the notice to Plaintiffs' current addresses because the SSA already sent Plaintiffs' Social Security

---

[14] While Count VI may be limited to the issue of "actual notice" as drafted, Count V is clearly not. As these claims are based on the same set of allegations and, for the reasons stated herein, both state a claim for Due Process violation, the Court will allow both claims to proceed although the specific claim for relief in Count VI may ultimately be stricken.

statements annually to their current addresses. *See* ECF No. 15 at ¶¶ 46, 75, & 109; *see also* ECF No. 30 at 32.

While it may typically satisfy due process for the SSA to, as they did here, mail notice using the address of record from the agency's master beneficiary record and supplemental security income record, *see* ECF No. 25-1 at 26, that action may not always satisfy the due process notice requirement. To satisfy the due process notice requirement, the government is required to consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case. *See Jones*, 547 U.S. at 234–239 (holding return of certified letter marked unclaimed was inadequate notice when State could have sent notice by regular mail or posted the notice on the intended recipient's door); *Robinson v. Hanrahan,* 409 U.S. 38, 40 (1971) (holding notice of forfeiture proceedings sent to a vehicle owner's home address was inadequate when the State knew that the property owner was in prison); *Covey v. Town of Somers,* 351 U.S. 141, 146–47 (1956) (holding notice of foreclosure by mailing, posting, and publication was inadequate when town officials knew that the property owner was incompetent and without a guardian's protection). Thus, while Defendant is right that the SSA is not required to receive proof that Plaintiffs received actual notice before collecting the overpayment, it is required to use means that are reasonably calculated to provide Plaintiffs with notice under the circumstances before collecting the overpayment. Plaintiffs' allegation that the SSA had both old and new addresses at its disposal is a unique circumstance that, if true, the SSA may have been required to take into account if it wanted to comply with due process regarding notice. Although the Court is not currently, at this stage in the litigation, in a position to determine if it was unreasonable for the SSA not to access

and use Plaintiffs' "Social Security statement" addresses,[15] the Court must assume Plaintiffs' allegations are true, and those allegations are enough to state a claim for violation of the Constitution's Due Process Clause.

### 3.  Counts VII–X

In Counts VII–X and portions of XI, Plaintiffs Jones, Hart, and Grice allege, for a number of reasons, that the SSA has violated their constitutional due process rights and acted in contravention of 42 U.S.C. § 404(a) by recouping alleged overpayments from their tax refunds when those overpayments were paid to a third party. ECF No. 15 at ¶ 145. Plaintiffs Jones and Hart contend that they never received any payments from the SSA. *Id.* at ¶ 73 & ¶ 107. Grice does not know which person in her family, if any, may have received an overpayment. *See id.* at ¶ 40–66.

The Court will address the constitutional and then the statutory allegations. Accepting Plaintiffs' claims as true, it is plausible that the action of collecting a tax refund to recoup an overpayment from someone who never received an overpayment may fall "so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." *Sylvia Dev. Corp.*, 48 F.3d at 827 (citation omitted). Thus, Plaintiffs' allegations that the SSA collected overpayments from individuals who may not have received social security benefits states a plausible claim for a substantive due process violation.

Turning to 42 U.S.C. § 404(a)(1)(A), this provision provides, in part, that

> [w]henever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person . . .the Commissioner of Social Security shall decrease any

---

[15] Defendant argues that Congress intended that the SSA use the taxpayer addresses to mail the annual Social Security statements and not for any other purpose. ECF No. 25-1 at 27. This is a merits argument (that using the addresses would not be reasonable) and will not be considered on a motion to dismiss for failure to state a claim.

> payment under this subchapter to which such overpaid person is
> entitled, or shall require such overpaid person or his estate to
> refund the amount in excess of the correct amount, or shall
> decrease any payment under this subchapter payable to his estate
> or to any other person on the basis of the wages and self-
> employment income which were the basis of the payments to such
> overpaid person, or shall obtain recovery by means of reduction in
> tax refunds based on notice to the Secretary of the Treasury . . . .

Plaintiffs allege that Defendant has violated this statute by recouping an alleged overpayment

through Plaintiffs' tax refunds when Plaintiffs never actually received an overpayment from the

SSA. *See* ECF No. 15 at ¶ 145 & ¶ 151. Defendant responds that it has not engaged in the action

Plaintiffs allege and Plaintiffs are mistaken in their interpretation that they did not receive an

overpayment. ECF No. 25-1 at 27–28. Specifically, Defendant argues that Plaintiffs had to have

received an overpayment because the SSA is not entitled to collect an overpayment debt from

Plaintiffs' tax refunds unless those Plaintiffs were the individuals who incurred the debt. *Id.*

Thus, Defendant contends, Plaintiffs were the primary beneficiaries of the overpayment. *Id.*

Put simply, the parties agree on the law but not on the facts. While discovery may prove

Defendant's version of the facts correct, Plaintiffs specifically contend that the SSA did not

follow the procedure it now claims to have followed. At this point, the Court will not decide

whether Plaintiffs did or did not receive an overpayment. Taking Plaintiffs' Complaint

allegations as true, they did not receive an overpayment, and Plaintiffs have plead "factual

content that allows the court to draw the reasonable inference that [D]efendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

## V. CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss is GRANTED, in part,

and DENIED, in part. Plaintiff Theodore Verbich is DISMISSED from this case for failure to

exhaust administrative remedies. Further, the portions of Hart's and Jones' claims alleging that

the SSA violated constitutional and statutory law by referring their alleged debt to credit bureaus are DISMISSED for lack of standing. In addition, the portions of Counts III & VI alleging violation of the Constitution's *Ex Post Facto* clause are DISMISSED for failure to state a claim. Also, Plaintiffs' Motion for Relief under Fed. R. Civ. P. 56(d), ECF No. 38, is DENIED because the Court has not considered Defendant's Motion to Dismiss as one for summary judgment.[16] And Plaintiffs' Motion to Certify Class and Request for Stay of Briefing, ECF No. 11, is DENIED without prejudice and with permission to refile.

A separate Order shall issue.

Dated: March 31, 2015

_____/S/_____
George J. Hazel
United States District Judge

---

[16] A Motion for Relief under Fed. R. Civ. P. 56(d) is only appropriate in response to a motion for summary judgment.