FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 MAR 14  P 1:20

CLERK'S OFFICE
AT GREENBELT

BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

**MARY L. GRICE,** *et al.*

    Plaintiff,

v.                                Case No.: GJH-14-1082

**CAROLYN W. COLVIN,**
(Acting Commissioner of the
Social Security Administration)

    Defendant.

## MEMORANDUM OPINION

In this putative class action lawsuit, Plaintiffs John Jones and Denise Hart,[1] on behalf of themselves and others similarly situated, and Mary Grice, for herself,[2] (collectively, "Plaintiffs") allege several constitutional and statutory violations in connection with the Social Security Administration's (the "SSA") practice of confiscating portions of Plaintiffs' tax refunds, without proper notice, to satisfy social security overpayments that occurred over ten years prior. Carolyn W. Colvin, the acting Commissioner of the SSA ("Defendant"), having been unsuccessful in seeking dismissal of all of Plaintiffs' claims in an earlier motion to dismiss for lack of jurisdiction and failure to state a claim, *see* ECF Nos. 25, 46 & 47, again moves to dismiss this suit, this time on the ground of mootness. ECF No. 62. Plaintiffs oppose the Motion to Dismiss, ECF No. 65, and have filed several of their own motions: a Motion for Leave to File a Second Amended Complaint and Add Two New Party-Plaintiffs, ECF No. 63, a Second Motion to

---

[1] At some point after the filing of the Amended Complaint, Denise Hart changed her name to Denise Smith. *See* ECF No. 65 at 5. For ease of reference, the Court will refer to her here as Denise Hart.

[2] Additional named Plaintiffs have already been dismissed from this action. *See* ECF Nos. 46 & 47.

Certify a Class, ECF No. 64, and a Corrected Motion for Issuance of a Scheduling Order and Leave to Commence Discovery, ECF No. 67. A hearing was held on November 5, 2015, and, pursuant to the Court's January 20, 2016 Order, ECF No. 82, the Parties each submitted supplemental memoranda in support of their arguments on Defendant's Motion to Dismiss. ECF Nos. 83 & 84. For the reasons that follow, Defendant's Motion to Dismiss is granted and Plaintiffs' Motions are denied.

## I. BACKGROUND

Having previously addressed in some depth the relevant statutory and factual background that is at issue in this case, the Court will not repeat that discussion here. *See Grice v. Colvin*, 97 F. Supp. 3d 684, 689–95 (D. Md. 2015) ("*Grice I*"). Rather, the Court will only summarize the facts necessary to resolve the motions currently pending.

In 2011, the SSA amended its regulations to allow for the collection of social security overpayments through a tax offset program, regardless of when such an overpayment was made. *See* 76 Fed. Reg. 65107-01 (Oct. 20, 2011) & 20 C.F.R. § 404.520(b). Previously, the tax offset program would only be used to collect debts that were less than ten years old. Under the new regulations, the SSA sent notice of an overpayment and notice of its intent to collect the overpayment through a tax offset to Plaintiffs at their address of record. Plaintiffs, however, no longer lived at the addresses where the notices were sent—some having moved from those addresses several decades earlier—and only became aware of the overpayments when they received a letter from the Department of the Treasury indicating that they would not be receiving a tax refund because it was used to pay their SSA debt. When Plaintiffs attempted to contact the SSA to assert that they never received notice and did not owe an overpayment, they received a

variety of unsatisfactory responses.[3] *See Grice I*, 97 F. Supp. 3d at 692–95. The instant lawsuit was then initiated in this Court on April 8, 2014. ECF No. 1. Before Defendant answered the Complaint, on June 23, 2014, Plaintiffs filed an Amended Complaint seeking declaratory and injunctive relief and asserting that the notices sent to Plaintiffs were not in accordance with their due process rights and that the collection of the overpayments violated the law. *See* ECF No. 15; *Grice I*, 97 F. Supp. 3d at 689–95.

Defendant filed a motion to dismiss the Amended Complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted on August 15, 2014, ECF No. 25, which the Court granted, in part, and denied, in part. As is relevant to the present Motion, Defendant argued in her first Motion to Dismiss that each of the individual Plaintiffs' claims were moot because the SSA had already refunded the amounts withheld from Plaintiffs' tax returns. *See* ECF No. 25-1 at 20–21.[4] The Court denied Defendant's Motion in this regard, holding that Plaintiffs still had a legally cognizable interest in the outcome of this case because, "[w]hile the SSA has returned the Plaintiffs' refunds, the SSA maintains that Plaintiffs owe money due to overpayments." *Grice I*, 97 F. Supp. 3d at 706. Indeed, the letter accompanying the return of Plaintiffs' tax refunds stated that "[t]his refund does not eliminate your overpayment. If you want to discuss repayment options or request a waiver, please contact us. To request a waiver, you can also complete the enclosed SSA–632 waiver form." *Id.* Thus, the Court concluded that, where "the SSA still maintain[ed] that the Plaintiffs owe[d] debts to the agency, Plaintiffs' claims [were] real and substantial." *Id.* The Court also rejected Defendant's argument

---

[3] Generally, after the SSA makes an initial determination that an overpayment was made and must be recouped, the allegedly overpaid individual has the option to seek a reconsideration of that decision, 20 C.F.R. § 404.909, and/or seek a waiver of the debt, 20 C.F.R. § 404.506.

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

that the Court lacked jurisdiction over Plaintiffs' claims for failure to exhaust their administrative remedies.[5] Because "Plaintiffs ha[d] attempted to proceed through administrative channels and the SSA ha[d] . . . frustrated their efforts to exhaust [their administrative] remedies," the Court concluded that exhaustion was not necessary. *Id.* at 703. Indeed, the Court noted that "[i]t would be difficult to find a better case for waiving exhaustion [than] one where the SSA did not permit exhaustion in the first place." *Id.* at 704.

After this Court's ruling on Defendant's first Motion to Dismiss, rather than answering the Amended Complaint, Defendant filed a Motion to Remand this case to the SSA so that the agency could develop a factual record for resolution of Plaintiffs' claims, which Plaintiffs opposed. ECF Nos. 50 & 52. Before the Court could rule on that Motion, however, it was withdrawn, and Defendant represented that the SSA had, as a matter of its statutory authority, granted waivers to each of the remaining named Plaintiffs. *See* ECF Nos. 57 & 60; *see also Grice I*, 97 F. Supp. 3d at 690–91 (explaining that the SSA may waive an individual's overpayment "if the individual shows that he or she is without fault in causing the overpayment and that 'adjustment or recovery would either defeat the purpose of title II of the Act or be against equity and good conscience.'" (quoting 20 C.F.R. § 404.506(c)). Upon the granting of such waivers, each Plaintiff's prior overpayment balance was reduced to zero; in other words, the SSA no longer "maintains that Plaintiffs still owe the amount of the overpayment." *See* ECF Nos. 57 & 60; *Grice I*, 97 F. Supp. 3d at 706. Defendant now moves to dismiss the Amended Complaint on the ground that this Court no longer has subject matter jurisdiction over Plaintiffs' claims because those claims are moot. *See* ECF No. 62. Plaintiffs oppose dismissal, and argue that their claims are not moot, but that even if they are, Plaintiffs Jones and Hart may still pursue

---

[5] The Court did dismiss the claims of one named Plaintiff, Theodore Verbich, for failure to exhaust administrative remedies because Verbich had not satisfied the nonwaivable presentment requirement of administrative exhaustion. *Grice I*, 97 F. Supp. 3d at 699–703.

this case in their capacity as class representatives. *See* ECF No. 65. Plaintiffs also seek leave to file a Second Amended Complaint to add two additional plaintiffs, Ida Greer and Laritta Fry, as class representatives. *See* ECF No. 63. Greer, a resident of New York, and Fry, a resident of Texas, have claims similar to those of Jones and Hart, the would-be class representatives whose claims the SSA argues are now moot. *See* ECF No. 63-1 at ¶¶ 92–118. Plaintiffs argue that, even if Jones' and Hart's claims are moot, this case can proceed with Greer and Fry as class representatives. *See* ECF No. 65 at 6.

## II.   DISCUSSION

Article III of the United States Constitution limits federal court jurisdiction to "cases" and "controversies." The Supreme Court has interpreted this requirement "to demand that an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (internal quotation marks and citations omitted). Thus, if a plaintiff's case is moot, the court lacks subject-matter jurisdiction. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70, 104 S. Ct. 373 (1983). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed . . . ." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78, 110 S.Ct. 1249 (1990)); *see also Simmons v. United Mortgage & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (quoting *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir.2008)). "This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Genesis*

*Healthcare*, 133 S. Ct. at 1528. Indeed, "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 93, 130 S. Ct. 576 (2009)).

Before the Court's ruling on Defendant's first Motion to Dismiss, each Plaintiff had already received a refund of the money recouped through the tax offset program, but, at that time, the Court determined that Plaintiffs' claims were not moot because "the SSA still maintain[ed] that the Plaintiffs owe debts to the agency . . . ." *Grice I*, 97 F. Supp. 3d at 706. That is no longer true now that each Plaintiff's debt has been waived by the SSA as a matter of its statutory authority. It can no longer be said, therefore, that John Jones, Denise Hart, or Mary Grice maintains a concrete interest in the resolution of this case. Indeed, as Defendant explained, "[b]ecause SSA's waiver of Plaintiffs' debts means they are no longer subject to the policies and procedures that they challenge in this lawsuit, Plaintiffs' claims are moot."[6] ECF No. 62-1 at 12.

In this sense, this case is similar to *Alvarez v. Smith*, 558 U.S. 87, 130 S. Ct. 576 (2009), a case in which the plaintiffs challenged an Illinois law that allowed police officers to seize property, without a warrant, where the officer had probable cause to believe the property was used to facilitate a drug crime and where a warrantless seizure "would be reasonable" under the circumstances. *See id.* at 89–90. The plaintiffs were individuals whose cars or cash was seized without a warrant, and they sought to certify a class action to declare that they had a due process right to a prompt post-seizure probable cause hearing, and to enjoin the defendants' then-current

---

[6] Plaintiffs' argument that their demand for attorneys' fees preserves their personal stake in this case, *see* ECF No. 65 at 9–10, is contrary to clear Supreme Court precedent. *See Lewis*, 494 U.S. at 480 ("[An] interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim . . . ." (citation omitted)).

practice of keeping the property in custody for longer than that which was necessary to provide for such a post-seizure hearing. *Id.* at 90–91. Before the case reached the Supreme Court, however, the State had returned the cars taken from the named plaintiffs, and those who had cash seized from them either forfeited their right to it or accepted as final the State's return of some of it. *Id.* at 92. The Supreme Court concluded that the case was moot and remanded with instructions for the case to be dismissed because there was "no longer any actual controversy between the parties about ownership or possession of the underlying property." *Id.* at 92, 97. Although the parties "continue[d] to dispute the lawfulness of the State's hearing procedures," the Court held that, where the individual plaintiffs' property had already been returned to them or forfeited, "that dispute [was] no longer embedded in any actual controversy about the plaintiffs' particular legal rights. Rather, it [was] an abstract dispute about the law, unlikely to affect these plaintiffs any more than it affects other Illinois citizens." *Id.* at 93. Such a dispute, the Court explained, is one that is "solely about the meaning of a law, abstracted from any concrete actual or threatened harm," and therefore "falls outside the scope of the constitutional words 'Cases' and 'Controversies.'" *Id.* Here, too, because the SSA has granted waivers to the named Plaintiffs of their social security overpayments, the fact that Plaintiffs "continue to dispute the lawfulness" of the SSA's procedures is of no moment because that dispute is "no longer embedded in any actual controversy about the plaintiffs' particular legal rights."[7] *Id.*; *see also, e.g., Reynolds v.*

---

[7] The Court is unpersuaded by Plaintiffs argument that, absent an order granting them the relief they requested in the Amended Complaint, "there is . . . nothing to prevent the SSA from changing its mind" and revoking the waivers. *See* ECF No. 65 at 9. It is true, of course, that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693 (2000). But even under the "voluntary cessation" doctrine, the court must dismiss a lawsuit as moot if "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already*, 133 S. Ct. at 727 (quoting *Laidlaw*, 528 U.S. at 190). Here, the SSA has exercised its statutory authority to waive Plaintiffs' debts. Although Plaintiffs argue that the SSA has the authority to revoke these waivers, the Court has not been given any reason to believe it will do so, thus, it cannot be said that "the allegedly wrongful behavior could . . . reasonably be expected to recur." *Id.*; *see also Johnson v. D.C.*, 248 F.R.D. 46, 54–55 (D.D.C. 2008) ("To obtain prospective injunctive relief, a plaintiff must demonstrate 'that [she] is

*Shalala*, No. CIV. A. 93-0977 PLF, 1995 WL 434452, at *2 (D.D.C. July 12, 1995) (dismissing putative class action challenging policies related to Supplemental Security Income overpayments because "plaintiffs no longer ha[d] a personal stake in th[e] controversy" where Secretary of Department of Health and Human Services issued waivers to individual plaintiffs).

Plaintiffs argue, however, that the fact that they seek to represent a class of similarly-situated individuals must save this case from dismissal on mootness grounds. ECF No. 65 at 10–19. The Court disagrees. Before a class is certified under Federal Rule of Civil Procedure 23, the class has not obtained legal status independent of the individual named plaintiffs. *See Sosna v. Iowa*, 419 U.S. 393, 399, 95 S. Ct. 553 (1975). Thus, until a class is certified, if the individual's claim becomes moot, the entire suit becomes moot. *See Swan v. Stoneman*, 635 F.2d 97, 102 n.6 (2d Cir. 1980) ("As a general rule, a class action cannot be maintained unless there is a named plaintiff with a live controversy both at the time the complaint is filed and at the time the class is certified." (citing *Sosna*, 419 U.S. at 402)); *cf. U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404, 100 S. Ct. 1202 (1980) ("A named plaintiff whose claim expires may not continue to press the appeal on the merits until a class has been properly certified."). In the context of a putative collective action under the Fair Labor Standards Act ("FLSA"), the Supreme Court explained that the "[plaintiff's] suit became moot when her individual claim became moot, because she lacked any personal interest in representing others in this action." *Genesis Healthcare*, 133 S. Ct. at 1529; *see also Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) (per curiam) (holding that jail inmate's claim for injunctive relief became moot upon his release and that "[h]is denomination

---

realistically threatened by repetition of [the violation].' Even where a suit presented a live controversy when filed, the mootness doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will not affect the parties' rights presently and will not have a 'more-than-speculative' chance of affecting them in the future." (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660 (1983); *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990)); *Ravulapalli v. Napolitano*, 840 F. Supp. 2d 200, 205 (D.D.C. 2012) ("Courts afford agency actions a presumption of regularity in the absence of clear evidence to the contrary." (internal quotation marks and citations omitted)).

of th[e] action as a class action d[id] not save his request for injunctive relief because he was not a member of the class he purported to represent at the time class certification was denied by the district court").

The general rule that "a class action cannot be maintained unless there is a named plaintiff with a live controversy both at the time the complaint is filed and at the time the class is certified" is not without exceptions, however. *Swan*, 635 F.2d at 102 n.6; *see also Sosna*, 419 U.S. at 399 (holding that class action claims are not moot where named plaintiff's claim became moot after certification of class under Rule 23 because "[w]hen the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by [the individual plaintiff]"); *Geraghty*, 445 U.S. at 404 & n.11 (holding that class action was not moot where individual plaintiff's claim became moot between the time of the district court's erroneous denial of class certification and its reversal on appeal; reversal of erroneous decision "relates back" to date of the denial of class certification). As is most relevant to this case, in *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S. Ct. 1661 (1991), the Supreme Court held that where a claim is "so inherently transitory that the trial court will not have . . . enough time to rule on a motion for class certification before the proposed representative's individual interest expires," an otherwise moot individual claim will nevertheless not moot the class action because the certification of a class would "relate back" to the filing of the complaint. *Id.* at 52.

Plaintiffs argue that the principle announced in *McLaughlin* applies here—in other words, that their claims are "inherently transitory" because the SSA will continue to issue waivers to any plaintiff named in a lawsuit against it. *See* ECF No. 65 at 11–13. They contend that the SSA will merely "pick[] off" each class plaintiff that might step forward in the future. *Id.* at 11. In

support of their argument, they rely on *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011), a case in which the named plaintiff in a putative collective action under the FLSA rejected the defendant's offer of judgment under Federal Rule of Civil Procedure 68 and the Ninth Circuit had to consider whether that offer of judgment mooted the entire class action. In concluding that the "inherently transitory" relation-back doctrine applied to save the suit from dismissal on mootness grounds, the Court explained:

> [W]e see no reason to restrict application of the relation-back doctrine only to cases involving *inherently* transitory claims. Where, as here, a defendant seeks to "buy off" the small individual claims of the named plaintiffs, the analogous claims of the class—though not inherently transitory—become no less transitory than inherently transitory claims. Thus, although [the plaintiff's] claims "are not 'inherently transitory' as a result of being time sensitive, they are 'acutely susceptible to mootness' in light of [the defendant's] tactic of 'picking off' lead plaintiffs with a Rule 68 offer to avoid a class action."

*Id.* at 1091 (emphasis in original) (quoting *Weiss v. Regal Collections*, 385 F.3d 337, 347 (3d Cir. 2004)). While this Court would have already had difficulty squaring this holding with the Supreme Court's decision in *McLaughlin* limiting the relation-back doctrine under such circumstances to claims that are, in fact, "*inherently* transitory," the Supreme Court further clarified in *Genesis Healthcare* that the relation-back doctrine "has invariably focused on the fleeting nature of the challenged conduct giving rise to the claim, not on the defendant's litigation strategy." *Genesis Healthcare*, 133 S. Ct. at 1531. Thus, even assuming the SSA granted waivers to the named Plaintiffs only in an effort to "pick off" these Plaintiffs before this Court had an opportunity to rule on a motion for class certification, the inherently transitory relation-back doctrine would not save this case from dismissal.[8]

---

[8] Nor does this case fall into the exception to the mootness doctrine allowing otherwise-moot claims to proceed where the claim is one that is "capable of repetition, yet evading review." *See Gerstein v. Pugh*, 420 U.S. 103, 111 n.11, 95 S. Ct. 854 (1975); *see also Reynolds*, 1995 WL 434452, at *3 ("The mere possibility that the SSA might again make overpayments to the named plaintiffs is not sufficient to excuse the fact that plaintiffs do not currently have a 'personal stake' in this case. The Supreme Court has never held that 'a mere physical or theoretical

In an effort to avoid the ramifications of the Supreme Court's clarification of the relation-back doctrine, Plaintiffs point out that *Genesis Healthcare* arose under the circumstances of an FLSA collective action suit, rather than a class action under Rule 23. ECF No. 65 at 10. The Court indeed noted in its decision that "Rule 23 [class] actions are fundamentally different from collective actions under the FLSA . . . ." *Genesis Healthcare*, 133 S. Ct. at 1529. This language has led some courts, including some in this district, to conclude that *Genesis Healthcare* simply does not apply in the Rule 23 context and that its holding was limited to collective actions under the FLSA. *See Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, 974 F. Supp. 2d 856, 863 (D. Md. 2013); *Craftwood II, Inc. v. Tomy Int'l, Inc.*, No. SA CV 12-1710 DOC, 2013 WL 3756485, at *4 (C.D. Cal. July 15, 2013). But that conclusion ignores the remainder of the analysis in *Genesis Healthcare* as well as the reach of the Court's earlier decisions in *Sosna* and *Geraghty*. "In *Sosna*, the Court held that a class action is not rendered moot when the named plaintiff's individual claim becomes moot *after* the class has been duly certified." *Genesis Healthcare*, 133 S.Ct. at 1530 (citing *Sosna*, 419 U.S. at 399) (emphasis in original). "*Geraghty* narrowly extended this principle to *denials* of class certification motions," *id.* (emphasis in original), noting that where an action would have achieved the independent legal status that comes with class certification but for an erroneous denial of class certification by the district court, and a named plaintiff's claim later becomes moot, a reversal on appeal relates back to the time of the denial. *Id.* at 1528 n.2. The plaintiffs in *Genesis Healthcare* attempted to extend the principle announced in *Geraghty* to the context of FLSA conditional certification but

---

possibility was sufficient to satisfy the test' for capable of repetition yet evading review. The fact that the SSA will continue to administer the [Supplemental Security Income] program in the same manner as it did prior to the institution of this lawsuit, and that overpayments could result again, is not sufficient to show that there is a 'reasonable expectation' or 'demonstrated probability' that the same plight will confront the named plaintiffs again." (citations omitted)).

that argument was rejected for at least two reasons. First, the plaintiffs had not yet moved for conditional certification, *id.* at 1530, and second, because:

> More fundamentally, essential to [the Court's] decisions in *Sosna* and *Geraghty* was the fact that a putative class acquires an independent legal status once it is certified under Rule 23. Under the FLSA, by contrast, "conditional certification" does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court. So even if respondent were to secure a conditional certification ruling on remand, nothing in that ruling would preserve her suit from mootness.

133 S. Ct. at 1530 (citations omitted). Thus, the distinction drawn between Rule 23 class certification and conditional certification under the FLSA in *Genesis Healthcare* is not one that leads this Court to the view that the relation-back doctrine should save Plaintiffs' claims in this case merely because they arise under Rule 23 and not the FLSA. Rather, the distinction the Supreme Court drew is that conditional certification under the FLSA does not create an "independent legal status" as does a class that is certified under Rule 23. Here, there is no certified class and, as was the case in *Genesis Healthcare*, "there is simply no certification decision to which respondent's claim could have related back." *Id.* At best, Plaintiffs could point to the two Motions to Certify Class that they have filed in this litigation, ECF Nos. 11 & 64, but in each case they sought a stay of briefing, indicating to the Court that these Motions were mere placeholders. Thus, there has not been an "erroneous denial of [a] class certification motion[]" as required by *Geragthy* for application for the relation back doctrine.[9] *See Genesis Healthcare*, 133 S. Ct. at 1530.

---

[9] Although Plaintiffs cite some cases decided after the Supreme Court's decision in *Genesis Healthcare* which they argue support their position, none of those cases control here. *See* ECF No. 65 at 18–19. In *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698 (11th Cir. 2014), the court concluded that the individual plaintiffs' claims were *not* moot where they *rejected* an offer of judgment under Federal Rule of Civil Procedure 68. *Id.* at 702. The court's "alternative basis," *id.* at 704, for concluding that the class claims would remain live even if the individual plaintiffs' claims were moot cannot be described as anything other than dictum. And in *Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015), the court only concluded that the defendant's *unaccepted* offer of full compensation does

The Court finds further support for its understanding of *Genesis Healthcare* in the Supreme Court's recent decision in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016). In that case, the plaintiff, Jose Gomez, sought to bring a class action against Campbell-Ewald Company, a nationwide advertising and marketing communications agency, for alleged violations of the Telephone Consumer Protection Act. Before the deadline for a motion for class certification, Campbell-Ewald made Gomez an offer for judgment under Federal Rule of Civil Procedure 68, but Gomez did not accept and instead allowed the Rule 68 offer to lapse. *Id.* at 667–68. The United States Court of Appeals for the Ninth Circuit concluded that the unaccepted Rule 68 offer did not moot Gomez's individual claim, nor did it moot the class action claims. *Id.* at 668. On appeal to the Supreme Court, the parties presented two questions that are relevant to the present case: "1. Whether a case becomes moot, and thus beyond the judicial power of Article III, when the plaintiff receives an offer of complete relief on his claim" and "2. Whether the answer to the first question is any different when the plaintiff has asserted a class claim under Federal Rule of Civil Procedure 23, but receives an offer of complete relief before any class is certified."[10] *See* Brief for Petitioner at i, *Campbell-Ewald Company v. Gomez*, 136 S. Ct. 663 (2016) (No. 14-857), 2015 WL 4397132 at i.

The Court held that an unaccepted offer of judgment under Rule 68 did not moot the individual plaintiff's claim, *Campbell-Ewald*, 136 S. Ct. at 670, and, in light of that conclusion, did not explicitly reach the second question presented. But the Court did note, in accordance with its long-standing precedent, that "[w]hile a class lacks independent status until certified, a would-be class representative *with a live claim of her own* must be accorded a fair opportunity to show

---

not render an individual plaintiff's claim moot. *Chapman* and other cases like it are, of course, unhelpful to the Plaintiffs in this case where, as a result of the SSA's grant of waivers, their individual claims are in fact moot.

[10] A third question presented, regarding whether the doctrine of derivative sovereign immunity applies to government contractors, is not relevant to this case.

that certification is warranted." *Id.* at 672 (emphasis added) (citing *Sosna*, 419 U.S. at 399). Here, of course, the Court has now ruled that the named Plaintiffs no longer have live claims of their own. And because their claims became moot before a class was certified, this action must be dismissed.

Finally, Plaintiffs' Motion for Leave to File a Second Amended Complaint does not save this case from dismissal. After a plaintiff has already amended her pleading once as a matter of course, any further amendments may only be made "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although "[t]he court should freely give leave when justice so requires," *id.*, the Court may deny a motion to amend the pleadings where amendment would be futile. *See Rubino v. New Acton Mobile Indus., LLC*, 44 F. Supp. 3d 616, 622 (D. Md. 2014) (quoting *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227 (1962)). "[T]he Court may deny as futile a motion to amend a complaint when the proposed complaint would not survive a motion to dismiss." *Dehaemers v. Wynne*, 522 F. Supp. 2d 240, 244 (D.D.C. 2007) (citing *James Madison, Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); 3 Moore's Federal Practice § 15.15[3] (3d ed. 2000) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.")).

Defendant argues that amendment would be futile where the proposed added parties reside outside of Maryland, making this Court an improper venue for resolution of their claims. The Court agrees. Because, as explained, the claims raised by John Jones, Denise Hart, and Mary Grice must be dismissed, Plaintiffs' proposed amended complaint would leave only Ida Greer, a New York resident, and Laritta Fry, a Texas resident, to pursue the class claims before this Court. Judicial review of claims arising under the Social Security Act "shall be brought in the

district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia." 42 U.S.C. § 405(g). Because neither Greer nor Fry resides in Maryland, this Court is not the proper venue to assert their claims.[11] Thus, because amendment of the complaint would be futile, Plaintiffs' Motion for Leave to File a Second Amended Complaint is denied.

In sum, while the policy decisions made by the SSA that led to this litigation might be described as being unfair, at best, and unconstitutional, at worst,[12] the claims of the remaining Plaintiffs are now moot and venue is improper for the proposed new Plaintiffs. Thus, dismissal is warranted.[13]

---

[11] During the Motions Hearing, counsel for Plaintiffs argued in passing that Defendant would be unable to raise a defense of improper venue as to Ida Greer and Laritta Fry because Denise Hart, a Pennsylvania resident, was made a party in Plaintiffs' First Amended Complaint, see ECF No. 15 at ¶ 15, and Defendant did not raise a defense of improper venue in its first Motion to Dismiss. Plaintiffs, however, also point to authority supporting the proposition that "the venue provision in 42 U.S.C. § 405(g) should be interpreted in harmony with 28 U.S.C. § 1391(e), such that venue is proper in an action under § 405(g) for all plaintiffs so long as it is proper for at least one plaintiff." *Fournier v. Johnson*, 677 F. Supp. 2d 1172, 1174 (D. Ariz. 2009). Thus, because Defendant in fact did *not* have a venue defense available to her when she filed her first Motion to Dismiss, that defense was not waived. *See Rowley v. McMillan*, 502 F.2d 1326, 1333 (4th Cir. 1974) ("[A]n amendment to the pleadings permits the responding pleader to assert only such of those defenses which may be presented in a motion under Rule 12 as were not available at the time of his response to the initial pleading."). Additionally, although Plaintiffs argue that this Court is a proper venue because the Court has mandamus jurisdiction under 28 U.S.C. § 1361, the Court has already once concluded that it, in fact, *cannot* exercise mandamus jurisdiction over these claims. *Grice I*, 97 F. Supp. 3d at 705. Plaintiffs have made no argument suggesting that the Court should reconsider that decision.

[12] Although not relied upon by the Court in reaching its conclusion, Defendant's representation that the waivers granted to these Plaintiffs are not unique, but rather are among the thousands granted to similar claimants, suggests that the SSA now agrees. *See* ECF No. 62-1 at 24; ECF No. 62-2.

[13] Because the Court must dismiss this action, it lacks jurisdiction to resolve Plaintiffs additional motions.

## III.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motions, ECF Nos. 63, 64, and 67 are **DENIED**. Defendant's Motion to Dismiss, ECF No. 62, is **GRANTED** and this case is **DISMISSED** without prejudice.[14] A separate Order follows.

Dated: March 14, 2016

GEORGE J. HAZEL  
United States District Judge

---

[14] At the Motions Hearing, Defendant indicated that it was only seeking a dismissal without prejudice pursuant to *Nationwide Mutual Insurance Co. v. Burke*, 897 F.2d 734, 740 (4th Cir. 1990) (directing the district court to dismiss case "without prejudice as moot").